OPINION OF THE COURT
Edward J. Greenfield, J.
Plaintiff, Prince Carpentry, Inc., has moved for summary judgment in this declaratory judgment action. In *920 that action, plaintiff seeks a declaration as to the respective rights and obligations of the parties concerning the various insurance policies allegedly covering Prince Carpentry, Inc. (Prince). The New York State Insurance Fund joins in the request of plaintiff Prince that plaintiff be granted all the relief sought in the complaint. The Superintendent of Insurance, however, as liquidator of Cosmopolitan Mutual Insurance Company, has cross-moved to dismiss the declaratory judgment action. Defendant United States Fire Insurance Company has cross-moved to dismiss the declaratory judgment action as premature. Defendant General Reinsurance Corporation has made a separate motion to dismiss the complaint against it on the ground that it fails to state a cause of action. All motions and cross motions are consolidated herewith for disposition.
The facts with respect to this controversy are not in dispute, and the only issues presented are questions of law. The facts are these: Tishman Realty & Construction Co. (Tishman) was the general contractor for work being done on a building being constructed at 1166 Sixth Avenue, New York. It employed Prince as a subcontractor on the job to perform carpentry work. The subcontract provided that Prince was “to indemnify and save harmless the Contractor against loss and expense by reason of the liability imposed by law upon the Contractor for damages because of bodily injuries, including death at any time resulting therefrom, sustained by any employee of the Sub-contractor while at the premises where work under this contract is conducted * * * including, but not limited to such injuries as are caused by the sole or concurrent negligence of the Contractor, whether attributable to a breach of statutory duty or administrative regulation * * * and such injuries for which liability is imputed to the Contractor.” The subcontract further provided that Prince was to obtain workers’ compensation insurance and liability insurance to cover the indemnification portions of the contract of at least $1,500,000. Prince thereupon obtained a comprehensive general liability insurance policy from Cosmopolitan Mutual Insurance Company (Cosmopolitan) with a liability limit of $1,000,000 per occurrence. The policy explicitly covered for liabilities assumed under the contractual provisions for indemnity. Prince also obtained from United *921 States Fire Insurance Company (U.S. Fire) a commercial comprehensive catastrophe liability policy providing coverage for liability including contractual indemnity liability for the excess over and beyond the Cosmopolitan policy.
Prince also maintained insurance with the State Insurance Fund covering its liability under the Workers’ Compensation Law for injuries or deaths to its employees. That policy included liability at common law for contribution or indemnity to third persons arising from the injury or death of an employee. Cosmopolitan in its turn, reinsured a portion of its liability policy with General Reinsurance Corporation (General).
One of Prince’s employees, Dominick Tucker, who was allegedly injured at the construction job site, brought an action against Tishman, as the general contractor. Tishman thereupon served a third-party summons and complaint upon Prince, alleging a first cause of action for contractual indemnity and a second cause of action for common-law indemnity or apportionment. Plaintiff thereupon tendered the third-party summons and complaint to its insurer, Cosmopolitan, which duly acknowledged coverage with respect to the first cause of action for contractual indemnity, but disclaimed coverage with respect to the second cause of action for common-law indemnity or contribution. Cosmopolitan, nevertheless, undertook the defense of the action on behalf of Prince with respect to both causes of action. Prince also forwarded a copy of the third-party summons and complaint to the State Insurance Fund, which acknowledged coverage under the workers’ compensation policy with respect to the cause of action for common-law contribution or indemnity, but disclaimed with respect to the first cause of action for contractual indemnity.
During the pendency of the action, on October 24, 1980, Cosmopolitan was declared to be insolvent by an order of this court (Wallach, J.), designating the Superintendent of Insurance as liquidator. By the terms of the order, all policyholders and creditors were directed to present proofs of claim to the liquidator within 12 months so that he could determine all lawful and valid claims, and all persons were enjoined and restrained from prosecuting any action at law *922 or suit in equity against Cosmopolitan or the Superintendent of Insurance as liquidator.
With respect to Prince’s claim against Cosmopolitan, the liquidation bureau of the State Insurance Department wrote Prince acknowledging that the Cosmopolitan policy provided coverage to Prince with respect to contractual indemnity, but asserted that the Property and Liability Insurance Security Fund (Security Fund) would not pay for any such contractual indemnity.
The Security Fund, which the Superintendent of Insurance serves as administrator, which is financed by payments from insurers, was created to pay “allowed claims remaining unpaid, in whole or in part, by reason of the inability due to insolvency of an authorized insurer to meet its insurance obligations under policies” as therein specified. (Insurance Law, § 344, subd 2.)
Prince contends that the Security Fund is obligated to defend the tort action and to pay any judgment therein based upon contractual indemnity and/or common-law indemnity. It also contends that it is entitled to a declaration that U.S. Fire is liable for any amount over the actual protection provided by the underlying coverage. It also seeks a declaration that any funds that come into the hands of the Superintendent as liquidator, to the extent that they may have been generated by the Tucker lawsuit (such as any payments by General on the reinsurance policy), be applied directly to Prince’s claim, and not rate-ably with other creditors of Cosmopolitan. General has moved to dismiss the complaint against it, contending that it has no obligation on the reinsurance unless and until actual payment has been made by Cosmopolitan. These contentions will be discussed seriatim:
DECLARATORY JUDGMENT AGAINST SUPERINTENDENT OF INSURANCE
When Cosmopolitan, Prince’s liability insurer, which had acknowledged its liability on the cause of action for contractual indemnity and which had undertaken the defense, was placed in liquidation by order of this court on October 24, 1980, under the statutory scheme any claims which Prince might have had against Cosmopolitan had *923 not yet been liquidated. Accordingly, it was relegated to the making of a claim as a general creditor of Cosmopolitan, in the hopes of receiving some proportionate amount of its claim, dependent upon the value of the assets available for distribution in the payment of claims. It was precisely because of the risks to policyholders exposed to the insolvency of their insurers that New York created the Property and Liability Insurance Security Fund pursuant to section 334 of the Insurance Law (L 1969, ch 189, § 3, as amd). The objective was to provide insolvency protection to policyholders and claimants in all lines of property and liability insurance. (110th Ann Rep of Superintendent of Ins to NY State Legis, April 15, 1969, pp 13, 53.) The section created a Security Fund to be used to pay “allowed claims remaining unpaid, in whole or in part, by reason of the inability due to insolvency of an authorized insurer to meet its insurance obligations”. The fund was to be created by contributions based on premiums on property or risks within the State. The particular kinds of claims which would be reimbursed by the Security Fund were specified in subdivision 2 of section 334.
On February 17, 1981, the liquidation bureau of the State Insurance Department wrote a letter to Prince acknowledging that it was in receipt of the third-party summons and complaint against it and that the cause of action seeking contractual indemnification would be covered by Cosmopolitan’s liability policy. However, the bureau took the position that the Security Fund would not pay claims for indemnification of an employer as a result of the injury or death of an employee. Accordingly, the bureau relegated Prince to the status of a general creditor of the assets of Cosmopolitan, with no claim against the Security Fund. On September 17,1981, Prince commenced this action for a declaratory judgment. With respect to the Superintendent of Insurance, Prince sought a declaration that the Security Fund was obliged to defend Prince and to pay in full any liability found against Prince on the cause of action for contractual indemnity and on the cause of action for common-law contribution, or alternatively that the Superintendent of Insurance as liquidator of Cosmopolitan, was required to defend and pay such claims.
*924 The Superintendent of Insurance has cross-moved to dismiss the declaratory judgment against him on the ground that the liquidation order prohibits the prosecution of this suit and that the proper procedure to review the determination of noncoverage would be a CPLR article 78 proceeding which would be time barred.
The liquidation order of this court found Cosmopolitan to be insolvent and directed the Superintendent of Insurance, as liquidator, to take possession of its property and assets, directed notice to all claimants and policyholders and fixed all liability as of the date of the order. The order further provided: “ordered, that the * * * policy holders * * * of said COSMOPOLITAN MUTUAL INSURANCE COMPANY and all other persons, including but not limited to claimants, plaintiffs and petitioners who have claims against the said COSMOPOLITAN MUTUAL insurance company, be and they hereby are preliminarily enjoined and restrained from bringing or futher [sic] prosecuting any action at law, suit in equity, special or other proceeding against the said corporation or its estate, or the Superintendent of Insurance of the State of New York and his successors in office, as Liquidator thereof”. It is the contention of the Superintendent of Insurance, in cross-moving to dismiss the declaratory judgment action, that any and all determinations with respect to Prince’s claim must be made in the liquidation proceeding itself and not in any extraneous litigation.
Under the statutory scheme as envisioned in article 16 of the Insurance Law (liquidation), all claimants are to have their claims passed upon by the Superintendent of Insurance, with the ultimate determination as to the payments to be made by the Supreme Court. (See Matter of Knickerbocker Agency [Holz], 4 NY2d 245.) Ordinarily, attempts to circumvent the procedure by asserting claims in any other fashion are not countenanced. (Van Schaick v Lincoln Dye Works, 146 Misc 342.) Thus, all persons who have claims against an insurer are required to present them to the liquidator within four months. The liquidator determines, pursuant to statute, which matured claims are to be allowed (contingent claims are excluded), and upon the recommendation of the Superintendent, the court is to direct payments. (Insurance Law, §§ 543, 544, 545.)
*925 It is the contention of the Superintendent that any review of his determination may come only in an article 78 proceeding and that, inasmuch as Prince has failed to comply with those procedural requirements, and further has failed to bring the proceeding on within four months of the Superintendent’s determination, that this declaratory judgment action is barred.
This court does not agree. A party is not restricted to an article 78 proceeding, even when questioning the determination of an official, if the declaratory judgment action provides a fuller remedy than the more restrictive article 78 proceeding. Under the declaratory judgment action, the court may review not only the actions or judgment of the public official, but may consider the constitutionality and proper interpretation of an underlying statute. (Bloom v Mayor of City of N. Y., 35 AD2d 92.) We are not here concerned with whether the determination of the Superintendent was based on substantial evidence, but rather whether under an appropriate interpretation of the statute, the plaintiff is to be barred from asserting any claim under the statute as a matter of law (cf. Lutheran Church in Amer. v City of New York, 35 NY2d 121; New York Tel. Co. v Commissioner of N. Y. State Dept. of Transp., 62 Misc 2d 6, 8). Similarly, where article 78 relief might be inadequate, and more is sought than may be permitted under the article 78 proceeding, the matter may be appropriately dealt with as an action for declaratory judgment. (Matter of Zuckerman v Board ofEduc., 44 NY2d 336, 344.)
The relief sought here does, in fact, appear to be beyond the purview of an article 78 proceeding. Insofar as Prince seeks to compel the Security Fund to defend and hold it harmless, it is addressing itself to the Superintendent of Insurance as administrator of the fund, and not to his position as liquidator. The relief sought is not to reverse Prince’s status as a general creditor in the Cosmopolitan liquidation, and indeed, the action assumes that the distribution in the liquidation will be inadequate, as a result of which plaintiff may remain unpaid because of the insurer’s insolvency. That is the predicate for its independent claim against the Security Fund. (Insurance Law, § 344.) As a contingent claimant, since liability has not yet been fixed, *926 Prince has a contingent claim which may not share in a distribution by liquidation. (Insurance Law, § 544, subds 3, 4.) The claims against the Superintendent as the administrator of the Security Fund, whose assets are separate and distinct from those in his hands as liquidator of Cosmopolitan, thus are not matters for ruling within the liquidation proceeding itself. If plaintiff were successful, it would not in any way affect the rights of other creditors of Cosmopolitan or the size of their payments.
Given all that, it would appear that even though the Superintendent’s motion to dismiss cannot be sustained on procedural grounds it must be sustained on the merits on substantive grounds. Subdivision 2 of section 334 of the Insurance Law provides: “The property and liability insurance security fund shall be used in the payment of allowed claims remaining unpaid, in whole or in part, by reason of the inability due to insolvency of an authorized insurer to meet its insurance obligations under policies (i) on an account of claims from motor vehicle accidents * * * (ii) (a) in all of the kinds of insurance specified in subdivisions four, five, six, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen, sixteen, seventeen, nineteen, twenty and twenty-one of section forty-six with respect to coverage of property or risks located or resident in this state”.
Section 46 of the Insurance Law delineates the kinds of insurance which may be authorized in the State. It is to be noted that the Security Fund does not cover every kind of insurance policy indiscriminately. Included among the types of insurance policies which are covered are “Personal injury liability insurance” (Insurance Law, § 46, subd 13) and “Property damage liability insurance” (Insurance Law, § 46, subd 14). Significantly, policies specified in subdivision 15 are deliberately excluded. Hence, there can be no recovery from the fund for a claim under “Workmen’s compensation and employer’s liability insurance”. Such policies are defined as “insurance against the legal liability, whether imposed by common law or by statute or assumed by contract, of any employer for the death or disablement of, or injury to, his or its employee” (Insurance Law, § 46, subd 15). While plaintiff presents ingenious arguments that the Cosmopolitan policy, which covered *927 Prince against claims made for indemnification by the general contractor for the injury to or death of its own employee, is not “employer’s liability insurance” as defined, but must be considered a claim for contractual indemnification rather than a claim for personal injury or death of an employee, the recent decision of the Court of Appeals in which these very arguments were considered has foreclosed the question.
In Matter of Consolidated Mut. Ins. Co. (60 NY2d 1), the Court of Appeals ruled that the determination of the Superintendent that the Security Fund does not cover an employer’s claim against its insolvent liability insurer where the claim arises from the employer’s contractual or common-law liability to indemnify a third party held responsible, is neither contrary to the clear wording of the Insurance Law nor unreasonable. It should be noted that the court appeared to be applying an article 78 standard to the Superintendent’s determination in giving deference to his expertise in interpreting section 334. In that case, Arcade Cleaning Contractors, Inc. (Arcade) contracted to perform certain cleaning work and obligated itself to indemnify against liability on account of injury to persons arising out of or in connection with the performance of the contract, including injury to its own employees. When one of its employees sued the contractor for injuries sustained, a claim over was made against Arcade seeking indemnification based both on the contractual assumption of liability by way of indemnification and under common law. Arcade carried a general liability insurance policy with Consolidated Mutual and workers’ compensation coverage with the State Insurance Fund. Just as was the case here, the insurer undertook the defense of the third-party claim over, but it was placed in liquidation and the Insurance Department notified the insurer that the Security Fund would not pay any judgment which might eventuate against it. The Supreme Court in Kings County allowed the claim against the fund, reasoning that section 334 excluded only direct compensation claims and not third-party indemnification claims. The Appellate Division reversed, and the Court of Appeals agreed. Prince appeared in that case and submitted a brief amicus curiae presumably arguing the same points as in this action.
*928 The unanimous Court of Appeals (per Meyer, J.) found that while insurance against legal liability arising out of the death or injury of any person was included as covered by the Security Fund (Insurance Law, § 46, subd 13), and was broad enough to cover a claim over for contribution or indemnification, the explicit exclusion of employer’s liability insurance against legal liability imposed by common law or assumed by contract for injury to an employee created an ambiguity, and that the interpretation of the Superintendent excluding coverage was a permissible and reasonable interpretation. The court found that the inclusion of insurance against legal liability and the exclusion of employer’s liability insurance, was not an “irreconcilable inconsistency” since subdivision 13, which was included, was meant to cover claims arising out of the injury or death of any person other than an employee, while the omission of subdivision 15 indicated an intent to exclude from the Security Fund coverage for insurance against liability assumed by contract by an employer for injury to his employee. Although it was argued that the establishment of the Security Fund was designed to provide an effective guarantee against loss due to insurance company insolvency in all liability insurance, it was pointed out that the Security Fund does not, in fact, cover every kind of fund nor all kinds of claims. The court, accordingly, concluded that the Superintendent’s determination was neither arbitrary nor unreasonable and that, indeed, if there were a legislative omission, it should not be supplied by judicial interpretation.
Under these circumstances, the court is obliged to declare that under the applicable law, the Security Fund is neither required to defend or to pay Prince with respect to any claim over against Prince in the tort action either for contractual indemnification or for common-law contribution. Further, although Cosmopolitan had acknowledged coverage for contractual indemnity, and had undertaken to defend, the liquidator is not obligated to continue that defense. Any claims with respect to reimbursement, should the contingent claim against Cosmopolitan eventuate in a judgment, are to be determined within the liquidation proceeding and in accordance with the governing laws *929 applicable thereto. The State Insurance Fund, as the workers’ compensation carrier, insured Prince not only for injury or death to its employees, but also for its common-law liability for contribution or indemnification to third persons arising out of the injury or death of such employees. The State Insurance Fund, having acknowledged liability coverage for contribution or indemnification at common law, is obligated to provide a defense for Prince, and to request a special finding on trial as to whether Prince’s liability, if any arises out of common-law indemnification or contribution or under the provision for contractual indemnification. Should Prince wish to protect itself against the potential conflict of interest under these circumstances, it may elect to undertake defense through an attorney of its own choosing subject to reimbursement by the State Insurance Fund.
EXCESS INSURANCE
In addition to the underlying liability policy issued by Cosmopolitan, Prince took out an excess or commercial comprehensive catastrophe liability policy with U.S. Fire covering both “liability imposed upon the insured by law, or assumed by the insured under the contract.” While plaintiff has asked for summary judgment with respect to that policy, U.S. Fire has cross-moved to dismiss the declaratory judgment action as premature because there has been no determination as to whether Tucker will recover a verdict against Tishman and whether and in what amount Tishman will recover over as against Prince. New York practice expressly contemplates a third-party practice in which a claim over is made on a contingent basis (see CPLR art 14-A). Hence, declaratory judgments on the question of insurance policy coverage are commonly entertained before any monetary judgment has ever been rendered in the underlying tort action.
The question for resolution by the court is when and to what extent the excess insurance comes into play. Prince contends that ordinarily the excess would protect it for any judgment entered against it over and above $500,000. However, if no payment is made on the underlying policy, Prince argues that the excess carrier would then be substituted for the underlying carrier and that its liability would *930 start with the first dollar of any judgment rendered against Prince. U.S. Fire argues that its excess policy covers only any judgment in excess of $1,000,000.
While the complaint alleged that U.S. Fire’s policy covered for claims “in excess of $1,000,000.00”, an allegation which was duly admitted, it appears from the policy that this was a misstatement and that U.S. Fire was obligated under its policy to pay the “ultimate net loss” in excess of the “retained limit” not exceeding the maximum coverage of $5,000,000. Under the terms of the policy, it is clear that the retained limits, as set forth in the schedule, were $1,000,000 per occurrence and $500,000 per person. As only one claim is being asserted arising out of a single occurrence, the limits of the underlying policy would ordinarily have been $500,000 for that single claimant and the excess policy would come into play to cover any judgment over and above that amount. This being a motion for summary judgment, the court is not bound by the pleadings, which can, of course, be amended at any time up to the trial and even thereafter. (Loomis v Civetta Corinno Constr. Corp., 54 NY2d 18.)
Prince goes further, however, and argues that inasmuch as U.S. Fire was affording it catastrophe protection so that in all events it would not be personally responsible for any judgment up to $5,000,000, one of the catastrophes being insured against was the possible insolvency of the primary insurer. Hence, it argues that U.S. Fire is required to pay on its behalf any portion of the liability judgment not covered by any other insurer. The argument is that when there is “exhaustion” of the underlying policy, the excess policy comes into play, and on the facts here, if Cosmopolitan or its liquidator did not cover any judgment rendered against Prince, the obligation of U.S. Fire would start with the first dollar of such judgment up to its policy limits.
This court is not prepared to accept such an argument. The excess policy is triggered by “exhaustion” of the underlying policy only by reason of losses paid thereunder (i.e., more than $500,000 per person or $1,000,000 per occurrence). Catastrophe policy though it may be, the excess insurer is not insuring against the insolvency of the pri *931 mary insurer, but only against the possibility of a verdict in excess of $500,000 for any individual.
To the extent there is “other insurance” which covers Prince in the circumstances, the excess policy is declared to be excess to all other policies. Thus, if the State Insurance Fund is liable for common-law contribution or indemnification, the excess policy would come into effect only after limits of that underlying policy were exhausted.
REINSURANCE
Cosmopolitan reinsured some part of the liability risk on the Prince policy with General. Prince’s complaint alleges that to the extent that Cosmopolitan reinsured a portion of the risk with General, General is required to pay any liability imposed upon Prince in the underlying action. Both Prince and General have moved for summary judgment with respect to this contention.
It is clear that there is no contractual relationship of any kind between Prince and General. Prince paid no money for premiums to General, Cosmopolitan did. Accordingly, there is no right of direct action by an insured against its insurer’s reinsurer, even where the insurer has become insolvent. The reinsurance treaty is a contract of indemnity, not a contract of liability. (Greenman v General Reinsurance Corp., 237 App Div 648, 649, affd 262 NY 701.) Even if the insurer has become insolvent, the insurer is not considered a third-party beneficiary of the reinsurance treaty. (Sofia Bros. v General Reinsurance Corp., 153 Misc 6, 9-10; see Skandia Amer. Reinsurance Corp. v Schenck, 441 F Supp 715.)
The general proposition of law is buttressed by the explicit language of the reinsurance treaty which provides: “This Agreement is solely between the Company and the Reinsurer. Problems of the respective obligations of each party under this Agreement shall be rendered solely to the other party; however, in the instance of the insolvency of the Company, the liability of the Reinsurer shall be modified to the extent set forth in Article IX entitled ‘Insolvency of the Company.’ In no instance shall any insured of the Company or any claimant ask an insured of the Company for any rights under this Agreement.” (Emphasis supplied.)
*932 Prince argues that had Cosmopolitan not gone into liquidation, it would have paid whatever liability judgment was obtained, and General would have, in return, repaid Cosmopolitan under the terms of the reinsurance treaty. However, Cosmopolitan is now in liquidation and will most likely pay its creditors only a few cents on the dollar. Thus, Prince argues if General is obliged to pay only on the primary insurer’s payment of loss (National Ins. & Guar. Corp. v Vander Veer, 66 Misc 2d 862, 866), then General likewise would only have to pay out a few cents on the dollar on its risk, and would receive a windfall. It is clear, however, that any proceeds owing to Cosmopolitan under reinsurance agreements must be paid to the Superintendent of Insurance as liquidator in accordance with subdivision 1 of section 77 of the Insurance Law. This then goes to increase the size of the fund available for distribution to all of Cosmopolitan’s creditors. (Skandia Amer. Reinsurance Corp. v Schenck, supra, p 725.) Prince concedes that this is an established rule, but argues nevertheless that reinsurance funds should not protect all of Cosmopolitan’s creditors equally. Rather, it urges, where the claim of a specific insured results in a creation of a fund which would not otherwise be available to the insolvent insurer, the reinsurance proceeds applicable to the particular risk should go in the first instance for the protection of the insured whose liability gave rise to those proceeds. This court is not prepared on general public policy grounds to contravene the statute and preexisting law. The exact amounts to be paid by General to the Superintendent under the reinsurance treaty are not the concern of Prince, and are to be resolved as between the Superintendent and General as Cosmopolitan’s reinsurer.
Accordingly, Prince is not entitled to a declaration that such funds as come into the hands of the Superintendent as liquidator to the extent they may have been generated by the underlying lawsuit are first to be applied to the claim against Prince. Rather, this court is prepared to declare that all such funds as are received by the Superintendent are general assets which are to be applied proportionately to the payment of all Cosmopolitan creditors. Presumably, *933 sums paid by Prince’s own insurer, the State Insurance Fund and U.S. Fire, will not come into the hands of the liquidator of Cosmopolitan.