[No. B053172. Second Dist., Div. Five. Oct. 16, 1991.]

DENNY'S, INC., Plaintiff and Appellant, v.
CHICAGO INSURANCE COMPANY et al., Defendants and Respondents.

## COUNSEL

Lynberg & Watkins and Michael J. Larin for Plaintiff and Appellant.

Musick, Peeler & Garrett, R. Joseph De Briyn, Lynn A. O'Leary, John R. Lisenberry, Berman & Clark, Stephen J. Hillman and Diana L. Pauli for Defendants and Respondents.

## OPINION

**TURNER, P. J.—**

### I. INTRODUCTION

This case presents the question whether two excess insurers were required to provide coverage in the place of an insolvent underlying insurer. The trial court granted summary judgment pursuant to Code of Civil Procedure section 437c in favor of the two excess insurers. The trial court found that (1) the excess insurance policies were "not ambiguous with respect to assumption of the risk of an underlying insurer's insolvency or inability to pay" and (2) the excess insurance policies, through incorporation of the consistent terms and conditions of the insolvent underlying insurer's policy, expressly excluded coverage of the risk of an underlying insurer's insolvency. Because we agree with the trial court's first conclusion, we affirm the judgment. Therefore, we need not resolve the second issue.

### II. BACKGROUND

The parties filed a joint separate statement in support of cross-motions for summary judgment. Therefore, the underlying facts were undisputed. Plaintiff Denny's, Inc., doing business as Denny's Restaurant (Denny's) had liability coverage pursuant to insurance policies in three layers. The first layer consisted of primary comprehensive general liability insurance with a limit of $500,000 pursuant to a policy issued by the Home Indemnity

Company (Home). The second layer provided coverage in excess of $500,000 with a limit of $10 million pursuant to a policy issued by Midland Insurance Company (Midland).[1] The third layer consisted of excess insurance pursuant to policies issued by Chicago Insurance Company (Chicago) and Comstock Insurance Company (Comstock) providing joint and equal coverage with a limit of $10 million each (for a total of $20 million) in excess of $10 million. While these insurance policies were in effect, a patron of Denny's was injured "at or near" a facility owned by Denny's in Miami, Florida. The patron filed a personal injury action against Denny's which was settled for a total of $687,500. Home paid $500,000 of that amount pursuant to its general liability insurance policy. Prior to the settlement, Midland had become insolvent and was placed into liquidation by the Insurance Department of the State of New York. The California Insurance Guarantee Association (CIGA) assumed responsibility for Midland's insuring obligations in California pursuant to Insurance Code section 1063 et seq.[2] Denny's paid the $187,500 balance of the judgment against it pending the determination of this action.

### III. Procedural History

Denny's brought this action against CIGA, Chicago, and Comstock. In its first amended complaint for declaratory relief Denny's sought a determination as to whether the obligation to pay the balance of the judgment against it lay with CIGA or with Comstock and Chicago.[3] Comstock filed a motion

---

[1] The Midland policy stated that it provided coverage in excess of $5 million. In the first cause of action of its first amended complaint Denny's sought reformation of the Midland policy to reflect that the excess insurance provided for therein attached after the first $500,000 of primary insurance as intended by the parties to the insuring agreement rather than after the first $5 million of primary insurance as stated in the Midland policy. In the second cause of action of its first amended complaint Denny's sought a declaration to the effect that the excess coverage under the Midland policy began at $500,000 rather than at $5 million.

[2] CIGA is a mandatory organization of California insurers the primary function of which is to provide funds for the satisfaction of claims against insolvent insurers when those claims are not covered by other private insurance. (*Reserve Insurance Co.* v. *Pisciotta* (1982) 30 Cal.3d 800, 814, fn. 7 [180 Cal.Rptr. 628, 640 P.2d 764].)

[3] In its first cause of action for reformation against Chicago, Comstock and CIGA, Denny's alleged that at all relevant times defendants were each other's agent and were acting in the scope of such agency. Denny's further alleged that it entered into its agreement with Midland "by said agent" and that the agreement incorrectly described Denny's coverage which "[s]aid agent knew, or should have known . . . ." Those allegations were incorporated into Denny's second cause of action for declaratory relief. Those allegations were not addressed in the joint separate statement nor the other papers filed in the superior court. Normally, when a defendant's separate statement fails to address the factual matters raised in a cause of action, a moving party has failed to sustain its burden of disproving a plaintiff's right to relief under any theory raised by the pleadings. (*Bell* v. *Industrial Vangas, Inc.* (1981) 30 Cal.3d 268, 271, fn. 1 [179 Cal.Rptr. 30, 637 P.2d 266].) However, because the failure on the part of Chicago

for summary judgment against Denny's. In its summary judgment motion, Comstock asserted that as a matter of law it had not assumed the risk of the underlying insurer's insolvency and was therefore not obligated to cover the balance of the judgment against Denny's. Chicago joined in Comstock's summary judgment motion. CIGA filed a cross-motion for summary judgment against Denny's, Comstock, and Chicago on the grounds that (1) CIGA was prohibited by law from indemnifying Denny's where other insurance was available to Denny's and (2) Comstock and Chicago "must 'drop down' upon [Midland's] insolvency, because their excess liability policies do not clearly and unambiguously place the risk of maintaining collectible underlying insurance on Denny's." Denny's joined in and opposed the motions for summary judgment filed by Comstock and CIGA. It explained that "Denny's . . . stands in a unique position with respect to these motions. Obviously, if the court finds that Comstock [and Chicago] must 'drop down' Comstock [and Chicago] will be obligated to pay. Conversely, if Comstock [and Chicago are] not required to 'drop down[,'] CIGA will be required to pay, absent any other defensible issues in the case. As a result, Denny's both joins and opposes both motions." As noted above, the trial court entered judgment in favor of Chicago and Comstock and against Denny's. CIGA's summary judgment motion was denied. Denny's appeals from the judgment in favor of Chicago and Comstock.

## IV. THE RELEVANT INSURING PROVISIONS

The insurance policies issued by Chicago and Comstock to Denny's contained identical provisions limiting their liability. The "Limit of Liability—Underlying Limits" provisions stated: "It is expressly agreed that liability shall attach to the [excess insurer] only after the Underlying Umbrella Insurer(s) have paid or have been held liable to pay the full amount of the respective ultimate net loss liability as follows: [$10 million each occurrence, but $10 million in the aggregate for each annual period] and the [excess insurer] shall then be liable to pay only the excess thereof up to a further [$10 million part of $20 million combined limit each occurrence

and Comstock to disprove the allegations in the reformation and declaratory relief causes of action has not been challenged in the briefs filed by Denny's and at oral argument, any issue in this regard has been waived. (*Tiernan* v. *Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [188 Cal.Rptr. 115, 655 P.2d 317]; *Johnston* v. *Board of Supervisors* (1947) 31 Cal.2d 66, 70 [187 P.2d 686], disapproved on another point in *Bailey* v. *County of Los Angeles* (1956) 46 Cal.2d 132, 138-139 [293 P.2d 449].) Denny's third cause of action, alleging that Chicago and Comstock had violated their contractual and statutory duties of good faith and fair dealing by refusing coverage, was dismissed.

subject to a limit of $10 million part of $20 million combined limit in the aggregate for each annual period]."

## V. DISCUSSION

### A. Standard of Review

A motion for summary judgment will be granted if the moving papers establish that there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) ■ The standard for appellate review of a summary judgment motion was set forth by our Supreme Court in *Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46]. The court stated, "A defendant is entitled to summary judgment if the record establishes as a matter of law that none of the plaintiff's asserted causes of action can prevail. [Citation.] To succeed, the defendant must conclusively negate a necessary element of the plaintiff's case, and demonstrate that under no hypothesis is there a material issue of fact that requires the process of a trial." An appellate court determines de novo if there is a genuine issue of material fact and whether the moving party was entitled to summary judgment as a matter of law. (*Wilson v. Blue Cross of So. California* (1990) 222 Cal.App.3d 660, 670 [271 Cal.Rptr. 876].)

### B. The Excess Insurers, Comstock and Chicago, Were Entitled to Summary Judgment

■ Denny's contends that the language limiting liability in the Comstock and Chicago policies was ambiguous with respect to the question whether Comstock and Chicago assumed the risk of an underlying insurer's insolvency. Therefore, Denny's asserts, Comstock and Chicago were required to "drop down" and provide the coverage which would have been provided by Midland absent its insolvency. How this issue is resolved depends upon the wording of the policies. (*Reserve Insurance Co. v. Pisciotta, supra,* 30 Cal.3d at p. 807.) Our interpretation of the insurance policies is guided by certain established principles of law. Those principles were summarized by the Supreme Court in *Reserve,* which is the leading California case concerning an excess insurer's duty to take the place of an insolvent underlying insurer. ■ In *Reserve,* the court held: "Words used in an insurance policy are to be interpreted according to the plain meaning which a lay[person] would ordinarily attach to them. Courts will not adopt a

strained or absurd interpretation in order to create an ambiguity where none exists. [Citations.] [¶] On the other hand, 'any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer and . . . if semantically permissible, the contract will be given such construction as will fairly achieve its object of providing indemnity for the loss to which the insurance relates.' [Citations.] The purpose of this canon of construction is to protect the insured's reasonable expectation of coverage in a situation in which the insurer-draftsman controls the language of the policy. [Citations.]" (*Id.* at pp. 807-808.)

In *Reserve*, the excess insurance policy stated in relevant part, " 'The [excess insurer] shall only be liable for the ultimate net loss in excess of either: . . . 1. the *amount recoverable* under the underlying insurance . . . .' " (30 Cal.3d at p. 812, italics added.) The Supreme Court concluded that the language "amount recoverable" "might possibly be interpreted either to expose [the excess insurer] only for amounts over the dollar limits of the underlying insurance or to expose [the excess insurer] for amounts which the insured is not able to actually recover from the underlying insurer because of its insolvency." (*Id.* at p. 815.) Because the language "amount recoverable" was ambiguous, the court construed it in favor of the insured, and held that the excess insurer had assumed the risk of the underlying insurer's insolvency. (*Id.* at pp. 814-815.)[4]

The Supreme Court in *Reserve* expressly followed its earlier decision in *Fageol T. & C. Co. v. Pacific Indemnity Co.* (1941) 18 Cal.2d 748, 751-752 [117 P.2d 669]. In *Fageol* an insurer provided excess insurance in the event other insurance was "exhausted." The underlying insurer became insolvent. The Supreme Court held that the excess insurer had assumed the risk of exhaustion of the underlying insurance by insolvency. (*Ibid.*)

Division Three of this appellate district recently concluded that certain language in an excess insurer's policy precluded a finding that the excess

---

[4]Other jurisdictions have likewise held that policies containing language limiting an excess insurer's liability to that in excess of amounts "collectible" or "recoverable" under the underlying insurance policy "drop down" to the level of liability of an insolvent underlying insurer. (*Sifers* v. *General Marine Catering Co.* (5th Cir. 1990) 892 F.2d 386, 400-403, mod. on rehg. 897 F.2d 1288; *Donald B. MacNeal, Inc.* v. *Inter. Fire & Cas.* (1985) 132 Ill.App.3d 564 [477 N.E.2d 1322, 1324-1325]; *McGuire* v. *Davis Truck Services, Inc.* (La.Ct.App. 1988) 518 So.2d 1171, 1173-1174; *Beauregard* v. *Salmon* (La.Ct.App. 1968) 211 So.2d 732, 733-734; *Ins. Insolvency Fund* v. *Continental Cas. Co.* (1987) 399 Mass. 598 [506 N.E.2d 118, 120-121]; *Gladstone* v. *D.W. Ritter Co.* (1986) 133 Misc.2d 922 [508 N.Y.S.2d 880, 883-884]; *Lechner* v. *Scharrer* (1988) 145 Wis.2d 667 [429 N.W.2d 491, 494]; cf. *Gulezian* v. *Lincoln Ins. Co.* (1987) 399 Mass. 604 [506 N.E.2d 123, 124-126] [interpreting "applicable limits" to mean recoverable or collectible limits]; *American L. Mut. Cas. Co.* v. *Lumber Mut. Cas. Ins. Co.* (1937) 251 A.D. 231 [295 N.Y.S. 321, 324] [in an apportionment case, interpreting "valid and collectible insurance" as excluding uncollectible insurance of an insolvent insurer].)

insurer had assumed the risk of an underlying insurer's insolvency. (*Span, Inc.* v. *Associated Internat. Ins. Co.* (1991) 227 Cal.App.3d 463, 475-476 [277 Cal.Rptr. 828].) The excess policy in *Span, Inc.* provided, " 'In the event of reduction or exhaustion of the aggregate limits of liability applicable to the underlying insurance . . . *by reason of losses paid thereunder,* this policy shall, . . . , (A) in the event of reduction pay the excess of the reduced underlying limit; (B) in the event of exhaustion continue in force as underlying insurance.' (Italics added.) [Fn. omitted.]" (*Id.* at p. 476.) The court concluded that the excess policy "unambiguously contemplates 'exhaustion' of the underlying insurance only by *payment* of the underlying limits either by the insured or its primary carrier."[5]

 Unlike the ambiguous language "amount recoverable" construed in *Reserve* and the unmodified term "exhaustion" found in the *Fageol* policy, the language at issue here precludes an interpretation requiring Chicago and Comstock to "drop down" to the level of the underlying insurer. The Chicago and Comstock policies unequivocally provide that their liability will attach only after the underlying insurer has paid or has been held liable to pay *the full amount* of the underlying coverage, i.e., the policy limit, and that Chicago and Comstock will then be liable to pay *"only the excess"* of the underlying policy limit.

Denny's contends that the language "or have been held liable to pay" is susceptible of the interpretation that when an underlying insurer has been held liable to pay but is unable to pay because of insolvency, the excess insurer's duty "drops down" to the level of the underlying insurer. That argument assumes that the language "have paid or have been held liable to pay" is unqualified. However, the Comstock and Chicago policies qualify that language by stating that the excess insurers' obligations attach only to

[5]The same or similar language has likewise been held to preclude a finding that an excess insurer steps into the shoes of an insolvent underlying insurer in other jurisdictions. (*Zurich Ins. Co.* v. *Heil Co.* (7th Cir. 1987) 815 F.2d 1122, 1124-1126; *Mission Nat. Ins. Co.* v. *Duke Transp. Co., Inc.* (5th Cir. 1986) 792 F.2d 550, 553-554; *Molina* v. *United States Fire Ins. Co.* (4th Cir. 1978) 574 F.2d 1176, 1178; *Highlands Ins. Co.* v. *Gerber Products Co.* (D.Md. 1988) 702 F.Supp. 109, 113; *Radiator Specialty Co.* v. *First State Ins. Co.* (W.D.N.C. 1987) 651 F.Supp. 439, 440-442; *Guar. Nat. Ins. Co.* v. *Bayside Resort, Inc.* (D.V.I. 1986) 635 F.Supp. 1456, 1459; *Alabama Ins. Guar. Ass'n* v. *Kinder-Care* (Ala. 1989) 551 So.2d 286, 288-289; *U.S. Fire Ins.* v. *Capital Ford Tr. Sales* (1987) 257 Ga. 77 [355 S.E.2d 428, 432-433]; *Morbark Industries* v. *Western Emp. Ins.* (1988) 170 Mich.App. 603 [429 N.W.2d 213, 217-218]; *U.S. Fire Ins. Co.* v. *Coleman* (Mo.Ct.App. 1988) 754 S.W.2d 941, 942-945; *Steyr-Daimler-Puch A.G.* v. *Allstate Ins.* (1989) 151 A.D.2d 942 [543 N.Y.S.2d 538, 540-541]; *Prince Carpentry* v. *Cosmopolitan Mut. Ins.* (1984) 124 Misc.2d 919 [479 N.Y.S.2d 284, 292-293]; *St. Vincent's* v. *Ins. Co. of North America* (1982) 172 Misc.2d 665 [457 N.Y.S.2d 670, 672]; *Value City, Inc.* v. *Integrity Ins. Co.* (1986) 30 Ohio App.3d 274 [508 N.E.2d 184, 187-188]; *Federal Ins. Co.* v. *Pacific Sheet Metal, Inc.* (1989) 54 Wn.App. 514 [774 P.2d 538, 541].)

sums in excess of the full amount of the underlying insurance coverage. The language of the policies limiting the liability of Chicago and Comstock when read as a whole, and without isolating parts thereof, clearly and unambiguously states that those excess insurers are liable only when the underlying insurer has paid the policy limit or has been held liable to pay the policy limit (whether or not the underlying insurer has actually paid) and that their liability is limited to amounts in excess of the underlying policy limit (whether or not actually paid) up to the limits of the Chicago and Comstock policies.

Denny's relies on *Northmeadow Tennis* v. *Northeastern Fire* (1988) 26 Mass.App. 329 [526 N.E.2d 1333, 1335]. In *Northmeadow* the Appeals Court of Massachusetts reviewed an insurance policy which provided that the liability of the excess insurer attached only after the primary insurers " 'have paid or have been held liable to pay the full amount of their respective ultimate net loss.' [Fn. omitted.]" (*Ibid.*) The court reasoned that the phrase "held liable to pay" "posits an eventuality in which the insured, and hence the primary insurer, are [*sic*] liable but the insurer for some reason [such as insolvency] has not paid. . . . At least the policy is susceptible of that interpretation." (*Id.*, 526 N.E.2d at p. 1336.) The court, construing the ambiguity in favor of the insured, concluded that the excess insurer's liability "dropped down" to the level of the insolvent underlying insurer's liability. (*Ibid.*) *Northmeadow*, which is not authority binding on this court, is distinguishable because the policy at issue did not contain the additional language found in the Comstock and Chicago policies, that liability attaches only to amounts in excess of the limits of the underlying insurance. Moreover, we disagree that the language "or has been held liable to pay" is susceptible of the interpretation that the excess insurer assumed the risk of the underlying insurer's insolvency. The language "have paid or have been held liable to pay" the policy limits unambiguously requires that the insured's liability exceed the underlying insurance limits before any liability attaches to the excess insurer, whether or not the underlying insurer has actually paid out the policy limit.

Nonbinding authority from three other jurisdictions is in accord with our conclusion that the language "have paid or have been held liable to pay" as used in the Comstock and Chicago policies is not susceptible of the interpretation that the excess insurers assumed the risk of an underlying insurer's insolvency. In *Hudson Ins. Co.* v. *Gelman Sciences, Inc.* (7th Cir. 1990) 921 F.2d 92, 93-94, the United States Court of Appeals for the Seventh Circuit held that an excess insurance policy providing that liability would attach when the underlying insurer had paid or had been held liable to pay the policy limit unambiguously precluded a finding that the excess insurer must

"drop down" in place of an insolvent underlying insurer. The New York Supreme Court in *American Re-Ins.* v. *SGB Univ. Builders* (1988) 141 Misc.2d 375 [532 N.Y.S.2d 712, 716], considered the same language in an excess insurance policy and concluded that "the intention of the parties [that the excess insurer would be liable only for amounts in excess of the insolvent underlying insurer's policy limit] is clear beyond even a shadow of doubt." Similarly, in *Seaway Port Authority* v. *Midland Ins.* (Minn.Ct.App. 1988) 430 N.W.2d 242, the Minnesota Court of Appeals considered a policy of excess insurance which provided that the excess insurer would be liable "for any loss after the [underlying insurer] has admitted or has been held liable to pay [the underlying policy limit]." The court held that the policy declarations made it clear losses were covered only in excess of a stated amount and no other policy language could be interpreted to require the excess insurer to cover amounts which would normally have been covered by an insolvent underlying insurer. (*Id.* at pp. 248-249.)

Chicago and Comstock assert that language in the Midland policy which was incorporated into the Chicago and Comstock policies expressly placed the risk of insolvency of an underlying insurer on Denny's. The Midland policy provided that it covered liability in excess of the amount of specific underlying primary insurance and that the underlying primary insurance would be deemed to be effective to the full extent of the policy limits "irrespective of whether such underlying insurance is in force when the occurrence takes place, . . . and irrespective of the inability of the underlying insurer to pay by reason of bankruptcy or insolvency." The Comstock and Chicago policies provided, "This policy is subject to the same terms, definitions, exclusions and conditions . . . as are contained in or as may be added to the Underlying Umbrella Policies . . . prior to the happening of an occurrence for which claim is made hereunder." Because the Midland provision referred to a specific underlying primary insurer, it is questionable whether that language, when incorporated into the Chicago and Comstock policies, could be read as excluding the risk of insolvency of underlying excess insurers not referred to in the Midland policy. However, because we conclude that the Chicago and Comstock policies by the language discussed above expressly excluded assumption of the risk of Midland's insolvency, we need not resolve the question concerning this language in the Midland policy.

## VI. Disposition

The judgment pursuant to Code of Civil Procedure section 437c in favor of Chicago Insurance Company and Comstock Insurance Company is af-

firmed. Chicago Insurance Company and Comstock Insurance Company are to recover their costs on appeal from Denny's, Inc., doing business as Denny's Restaurant.

Ashby, J., and Boren, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 8, 1992.