EDWARDS, Judge.
The issue presented by these consolidated suits is whether the language of the applicable Interstate Fire & Casualty Company policies, which provided excess coverage, allow “drop down” coverage for policyholders insured by the excess carrier and Champion Insurance Company (Champion), the insolvent primary carrier. We agree with the district court that drop down coverage is provided from dollar one, but find that such coverage is triggered only after certain conditions are met. Therefore, we amend the judgment to include the required conditions for drop down coverage.
The Louisiana Insurance Guaranty Association (LIGA) and the liquidator of Champion, in separate suits, sought declaratory judgments against Interstate Fire & Casualty Company (Interstate) holding that the Interstate policies drop down and provide total coverage, both excess and primary. After the two suits were consolidated, LIGA filed motions for summary judgment in both suits and prayed that the court find that the Interstate policy attached to the motions provides drop down coverage for the Champion and Interstate insureds from dollar one and that Interstate must fulfill its obligations before LIGA can be obligated to pay. The trial court granted summary judgment in favor of LIGA and ordered Interstate to “pay claims made by or against [Champion insureds] under its policies ahead of and before LIGA has any obligation to pay....” Interstate appealed and assigned error to the trial court’s grant of the summary judgment that required “Interstate Fire & Casualty Company to drop down and provide the primary coverage formerly [owed] by Champion Insurance Company.”
*212 “[T]he controlling consideration on this ‘drop down’ issue is the agreement between the insurer and the insured, namely, the insurance policy itself.” Kelly v. Weil, 563 So.2d 221, 222 (La.1990). As in the case of other written agreements, the terms and provisions of an insurance contract are to be interpreted in their general and popular meaning. All ambiguities must be construed in favor of the insured and against the insurer. However, where the language of an insurance contract is clear and free of ambiguity, it constitutes the contract between the parties and courts have no authority to change or alter its terms under the guise of interpretation. Bernard, Lumber v. Louisiana Ins. Guar., 563 So.2d 261, 263 (La.App. 1st Cir.), cert. denied, 566 So.2d 981 (La.1990).
Interstate bases its position, that its policy provides only excess coverage above the limits of the underlying policy, on the following five policy provisions:
INSURING AGREEMENT
1.EXCESS INDEMNITY OYER AUTOMOBILE LIABILITY INSURANCE
WE will indemnify YOU for LOSS in excess of the PRIMARY INSURANCE. WE will not indemnify YOU if the LOSS is not covered under the PRIMARY INSURANCE. WE will not indemnify YOU beyond the limits of OUR insurance as stated in the DECLARATIONS. WE have no duty to assume responsibility for the investigation, settlement, defense or appeal of any claim made or suit brought, or proceeding instituted against YOU.
However, WE have the right and shall be given the opportunity to investigate and be associated in the defense and that of any claim, suit or proceeding, which in OUR opinion may create a liability on OUR part under this policy. If WE exercise this right, WE will assume OUR proportionate cost of all court costs, legal fees, investigation costs and interest incurred with OUR consent. In the event YOU, or the PRIMARY INSURER do not appeal a judgment which is in excess of the PRIMARY INSURANCE, WE may elect to do so at OUR own cost.
2. LIMITS OF LIABILITY: OUR policy is an excess policy over the PRIMARY INSURANCE. OUR obligation does not extend beyond the limits shown in the DECLARATIONS. WE are not obligated to pay under this policy until the PRIMARY INSURER has paid or has been held liable to pay the full amount of PRIMARY INSURANCE. WE shall then be liable to pay only such additional amounts necessary to provide YOU with a total coverage under the PRIMARY INSURERS and this policy combined.
3. OTHER INSURANCE: If YOU have other valid and collectible insurance with any other insurance company covering a loss also covered by this policy, the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance. However, when WE refer to other valid and collectible insurance, it does not include the PRIMARY INSURANCE or insurance specifically purchased by YOU to be in excess of this insurance.
4. MAINTENANCE OF PRIMARY INSURANCE: It is agreed by YOU that the PRIMARY INSURANCE should be maintained in force as collectible insurance during the full period of this policy. If YOU fail to maintain such policy, the insurance afforded by this policy shall apply in the same manner it would have applied had such policies been so maintained in force.
5. A This policy covers excess limits only as shown in Column 11 after and only after the limits, as shown in Column 1 of another insurance company, referred to as primary insurer are fully used and exhausted[.]
Interstate argues that an interpretation of the policy as a whole clearly does not allow drop down under any circumstances and clearly provides that Interstate is an excess *213 carrier, whose liability is only for amounts above the underlying limits up to the limits of the Interstate policy. Interstate asserts that application of the third and fourth sentences of the limits of liability provision to the factual situation here results in the excess insurer liability only after an insured has been held liable for the full amount of the underlying policy and then only for amounts needed to fill in the gap between the underlying limits of the Champion policy and the limits of the excess carrier’s policy.
LIGA argues that the limits of liability provision is susceptible of another interpretation. If Champion or its insured is held liable and, for whatever reason, including insolvency, Champion does not pay, the fourth sentence obligates Interstate to stand in for Champion and to pay whatever amounts are necessary to provide the insured with the coverage promised by both the primary and excess policies. Therefore, because of what is arguably an ambiguity created by two reasonable interpretations of the same provision, the third and fourth sentences of the limits provision must be interpreted in favor of the insured and coverage.
The provisions of the policy denote Interstate as an excess insurer that will pay after the underlying limits are used or exhausted, except in the situation apparently contemplated by the last two sentences of the limits provision. The fourth sentence is certainly susceptible of more than one interpretation. We agree with LIGA that a reasonable policyholder could read the language in question as an agreement to pay the sums necessary to cover the policyholder under both policies. The policyholder, who has in good faith paid the required premiums, should get the benefit of reasonably expected coverage.
However, the agreement to pay whatever is needed to afford this coverage is triggered only when the conditions of the third sentence are met. Interstate is not obligated to pay until Champion has paid, or until Champion or its insured has been held liable to pay, the full amount of the underlying limits. If Champion paid the full amount of the primary insurance, the excess carrier would be required to pay only the sums necessary to fill the gap in coverage from the Champion underlying limits up to the limits of liability of Interstate. However, if Champion is held liable to pay the full amount and does not pay, the excess insurer agrees “to pay only such additional amounts necessary to provide [the insured] with a total coverage under the PRIMARY INSURERS and this policy combined.” The sums necessary from Interstate to provide the coverage of both policies combined would obviously be greater than the amount owed under the excess policy alone and would begin with dollar one of the amount owed by Champion. Interstate would have to pay the same amount as the policyholder would expect to get from the combined coverage of the two policies, i.e., the amount owed by Champion in addition to the amount owed by Interstate, calculated as if Champion had paid. If Champion or its insured was not held liable to pay the full amount of the primary policy, Interstate does not agree to drop down and fill the gap in coverage caused by Champion or to provide the excess coverage.
Nothing in any of the other provisions deals with this specific situation or changes the operation of the fourth sentence. Under the maintenance provision, if the primary policy is not collectible insurance during the full period of the Interstate policy, the insurance provided by Interstate is to be applied as if the primary policy had been collectible. If the policy was collectible, and Champion or the insured was held liable to pay the full amount, but did not pay, Interstate would be liable as outlined above. We fail to see how the maintenance provision would change that operation. The agreement by Interstate in the limits of liability section to pay the sums necessary to afford the coverage of both policies is not conditioned on the collectibility of the primary policy. The agreement is merely to pay the sums necessary to afford the combined coverage in a specific situation. The notice to the policyholder that the Interstate policy provides coverage only after the primary insurer limits are used and *214 exhausted, also does not change the operation of the agreement by Interstate to afford the coverage of both policies when certain conditions exist.
For these reasons, we amend the judgment to provide that the Interstate policy affords drop down coverage from dollar one up to the Champion policy limits in addition to the policy limits of the Interstate policy, but only after Champion or its insured has been held liable to pay the full amount of the Champion policy. The costs of this appeal are assessed to the defendant, Interstate.
AMENDED, AND AS AMENDED, AFFIRMED.
SHORTESS, J., dissents and assigns reasons.