Paula Gonzalez GARCIA,
et al., Plaintiffs,

v.

Hector M. RIVERA, et al., Defendants.

Civ. No. 90–2139 (RLA).

United States District Court,
D. Puerto Rico,
Civil Division.

March 14, 1995.

Luis R. Mellado, San Juan, PR, for plaintiffs.

Carlos J. Morales Bauzá, Rosello Rentas & Rabell Mendez, San Juan, PR, Carlos A. Ramos, Hato Rey, PR, Rafael Vilá Carrión, Alfredo Ocasio, Cordero Miranda & Pinto, San Juan, PR, for defendants.

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND DISMISSING THIRD–PARTY COMPLAINT

ACOSTA, District Judge.

Before the Court is a Motion for Summary Judgment filed by the Puerto Rico Insurance Guaranty Association (Association)[1] as the statutory successor in interest of the insolvent insurer, Corporación Insular de Seguros (Corporación).[2] Prior to its insolvency, Corporación Insular was defending the interests in this action of defendants Puerto Rican Cars, Inc. (Hertz); Héctor M. Rivera and his wife and the American National Red Cross (Red Cross) by virtue of having issued a policy[3] on behalf of Hertz.

---

1. *See* docket No. 82, filed on May 23, 1994. Although entitled "Motion for Summary Judgment", the Association's motion did not attach a copy of Corporación Insular's underlying policy for the Court's examination nor any other pertinent exhibits or affidavits. Nonetheless, the Court shall consider the pleadings in the light most favorable to the non-moving party, i.e. National Union Fire Insurance Company.

2. *See also* Opposition to Motion for Summary Judgment, docket No. 89, filed on July 19, 1994 and Reply to Opposition ..., docket No. 98, filed on January 3, 1995.

3. Policy No. BA 4829.

The Association alleges that pursuant to Section 3812 of the Insurance Code of Puerto Rico, P.R.Laws Ann. tit. 26 § 3812, its coverage as successor in interest of Corporación Insular is triggered only after plaintiffs have exhausted their rights to recover from the policy issued to the Red Cross by National Union Fire Insurance Company. (National Union). Further, the Association requests the dismissal of National Union's Third Party Complaint against it for the attorney's fees incurred [4] due to Corporación's failure as primary insurance carrier to assume the timely defense of defendants. The Association argues that the fees cannot be considered a "covered claim" under the provisions of section 3805 of the Insurance Code of Puerto Rico, P.R.Laws Ann. tit. 26 §§ 3801–3818.

National Union contends, in response, that the policy it issued to the Red Cross does not afford primary coverage on behalf of Hertz, nor the subject vehicle which was owned by Hertz. As to the Third Party Complaint, National Union alleges that its claim for attorney's fees is a covered claim within the meaning of the statute because it is an obligation that had already been incurred by Corporación prior to its receivership, which obligation was acknowledged by Corporación when it afforded primary coverage and provided legal defense to codefendants Hertz, the Red Cross and Héctor M. Rivera and wife under its insurance policy.

## DISCUSSION

### Excess Versus Primary Coverage

■ The Association cites Section 3812 of the Puerto Rico Insurance Code as the basis for arguing that its coverage should be deemed "excess" over those other insurance proceeds which plaintiffs may be able to tap or draw-down from other policies. P.R.Laws Ann. tit. 26 § 3812 reads as follows:

### § 3812. Duplication of Recovery

(1) Any person having a claim against an insurer under any provision of an insurance policy which is not an insolvent insurer's and which is also a covered claim, shall first be required to exhaust his [sic] rights under such policy. Any amount payable on a claim covered under this chapter shall be reduced by the amount of any recovery under such insurance policy.

The Association argues that this provision establishes a *sine qua non* requirement that a plaintiff can only recover from the Association once it has exhausted its rights under a policy other than that of the insolvent insurer. It bases this argument on the analogy it makes of the language of section 3812 to the language of "escape type" provisions found in uninsured motorist endorsements in automobile liability insurance policies. Unfortunately for the Association, this case does not involve underinsured or uninsured motorist's coverage. Indeed, it is obvious that the purpose of Section 3812 of the Insurance Code of Puerto Rico as its title clearly declares, is to prevent double recovery. Therefore, the pertinent inquiry at this time would be whether a determination by this Court requiring the Association to provide primary coverage to its statutory limits would give rise to a situation in which plaintiffs would receive double recovery. This is plainly not the case, since National Union's coverage would only be applied to any amounts paid to plaintiffs over and above the limits of coverage provided by the Association in its role as successor of the insolvent insurer, Corporación Insular.

In opposition to the Association's arguments, National Union submits that it issued an excess, not a primary insurance policy to the Red Cross. Indeed, a review of its Business Auto Policy for the American Red Cross [5], in particular its **Part VI–Conditions** declares, under **Section B—Other Insurance,** as follows:

---

4. National Union seeks to recover the fees it incurred in the defense of all codefendants from the moment that Corporación was formally notified of the accident object of this litigation until the moment that Corporación formally acknowledged its duty to defend. *See* Corporación's notification to the Court that it will assume defense in this action, set forth in stipulation filed as part of Notice of Partial Voluntary Dismissal of Third Party Complaint, docket No. 37, filed on August 27, 1992.

5. *See* policy No. RMRA 145 9557, attached as Exhibit A to National Union's Opposition, docket No. 89.

For any covered auto you own this policy provides primary insurance. For any covered auto you don't own the insurance provided by this policy is excess over any other collectible insurance.

It can be effortlessly concluded therefore that National Union was an excess insurance carrier for the Red Cross since it is an uncontroverted fact that the vehicle involved in the accident and driven by codefendant Héctor M. Rivera was not owned by the Red Cross; rather, it was owned by Hertz and leased to the Red Cross.

 The excess insurance policy terms dictate the excess insurance carrier's liability when the primary insurer becomes insolvent, Matthew Bender, Business Insurance Law and Practice Guide § 4.09(2)(a) (1994); *Denny's Inc. v. Chicago Ins. Co.,* 234 Cal.App.3d 1786, 286 Cal.Rptr. 507 (2 Dist., 1991). Thus, we must turn to the language of National Union's insurance policy to determine its liability in light of the insolvency of the primary insurer, Corporación Insular de Seguros. Thereafter, we must interpret the applicable policy provisions under the above-cited **"Other Insurance"** clause included in the National Union policy, in particular that sentence which declares:

For any covered auto you don't own, the insurance provided by this policy is excess over **any other collectible insurance.** (emphasis added)

We note at the outset that courts that have had occasion to interpret similar insurance policy terms found within "Other Insurance" clauses have reached conflicting conclusions.

Some courts have found this language ambiguous. However, the majority have interpreted it to mean that this phrase refers only to insurance carried **in addition** to the underlying insurance, rather than interpreting it to mean that if the underlying insurance is itself not collectible, the excess carrier must "drop down".

James P. Schaller, M. Elizabeth Medaglia, Robert N. Kelly and Antoinette Patterson LeBel, Excess, Surplus Lines and Reinsurance: Recent Developments in Umbrella and Excess Liability Insurance, 24 Tort & Ins.

L.J. 283 (1989). (emphasis added, citations omitted).

We have meticulously examined the available case law [6] and have determined that the term "collectible", as used in the **"Other Insurance"** provision of the National Union policy, is not ambiguous.

Consequently, when the terms of the policy are clear, and the primary insurance company becomes insolvent, either before or after the time of loss, the excess insurance company remains obligated only to the limits set forth in the excess policy and the coverage does not drop down to act as primary insurance.

Matthew Bender, *supra,* § 4.09(1) (Supp. 1994) (citing *Mission Nat. Ins. Co. v. Duke Transp. Co. Inc.,* 792 F.2d 550 (5th Cir. 1986)). Further, National Union, having contracted with its insured and set a premium based on the existence of an underlying insurance policy, should have only such liability as would have existed had the underlying primary policy been collectible. *See generally* Allan D. Windt, Insurance Claims and Disputes § 6.12 (2d ed. 1988); Jane L. Draper, Annotation, Primary Insurer's Insolvency as Affecting Excess Insurer's Liability, 85 A.L.R. 4th 729, § 2(a) (1994).

Accordingly, we conclude that liability does not attach to National Union unless and until the underlying primary insurer, in this case the Association, has paid or has been held liable to pay its insurance coverage limits. *See Transco Exploration Co. v. Pacific Employers Ins. Co.,* 869 F.2d 862 (5th Cir.1989); *Washington Ins. Guar. Ass'n v. Guaranty Nat. Ins. Co.,* 685 F.Supp. 1160 (W.D.Wash. 1988); *Massachusetts Bay Transp. Authority v. Allianz Ins. Co., Inc.,* 413 Mass. 473, 597 N.E.2d 439 (1992); *Gibson v. Kreihs,* 538 So.2d 1057 (La.App. 4 Cir., 1989); *but see Louisiana Ins. Guar. Ass'n v. Interstate Fire and Cas. Co.,* 613 So.2d 210 (La.App. 1 Cir., 1992).

To hold to the contrary would, in effect, mean that an excess carrier insures the solvency of the underlying carrier. Since an excess insurer assumes a smaller risk than does a primary carrier—a fact which is re-

**6.** The Court has found no authority directly ad-

dressing this specific issue in this jurisdiction.

flected in the lower premiums of the excess insurance policy—requiring National Union to "drop down" would re-write the excess liability policy and place a risk on National Union which it had never agreed to assume. *See Zurich Ins. Co. v. Heil Co.*, 815 F.2d 1122, 1125 (7th Cir.1987); *Continental Marble and Granite v. Canal Ins. Co.*, 785 F.2d 1258, 1259 (5th Cir.1986); *cf.*, *Harville v. Twin City Fire Ins. Co.*, 885 F.2d 276, 278–79 (5th Cir.1989).

### Third-party Complaint for Attorneys' Fees

The provision of the Puerto Rico Insurance Code pertinent to a determination of the merits of National Union's request that the Association reimburse it for the attorney fees it incurred during the period of time that Corporación refused to defend the parties in this action is P.R.Laws Ann. tit. 26 § 3805–**"Definitions"**. It states, where pertinent, as follows:

(e) "Covered claim" means an unpaid claim ... which does not exceed the limits of the insurance policy to which this chapter is applicable, issued by an insurer declared to be insolvent....

"Covered claim" **shall not include any amount owed to** a reinsurer, **insurer,** joint underwriting association (pool), or underwriting associations, **as recoveries in subrogations or otherwise.** (emphasis added)

As can be ascertained, the drafters of the Insurance Code specifically excluded amounts owed to insurance companies from the definition of what would constitute a "covered claim" under the statute. Thus, following the plain language of this section of the Insurance Code, we find that National Union's Third–Party Complaint for recovery of attorneys' fees lacks a basis in law and is therefore unwarranted. Accordingly, National Union's Amended Third Party Complaint, **docket No. 42,** filed on October 8, 1992, is hereby **DISMISSED.**

IT IS SO ORDERED.