[S. F. No. 16604. In Bank.—Oct. 10, 1941.]

FAGEOL TRUCK & COACH CO. (a Corporation), Respondent, v. PACIFIC INDEMNITY COMPANY (a Corporation), Appellant.

Bronson, Bronson & McKinnon and Kirke LaShelle for Appellant.

Fitzgerald, Abbott & Beardsley and Edward B. Kelly for Respondent.

MOORE, J., *pro tem.*—This appeal by Pacific Indemnity Company is from the same judgment as that affirmed by our decision this day filed (No. 16600, *ante*, p. 731 [117 Pac. (2d) 661]). Other points, however, raised by this appeal require separate consideration.

■ 1. It is contended that the conditional judgment transforms appellant's excess insurance to a suretyship for Detroit's financial responsibility. Pacific argues that if it should be forced to satisfy the judgment and attempted, as subrogee, to enforce its judgment against Detroit, it would upon Detroit's application be restrained from such enforcement "upon the ground that it never requested Pacific to act as its surety." If such a contention ever had any merit, it comes too late to avail appellant. It was not mentioned in Detroit's appeal.

■ The V. S. I. endorsement of Pacific provides that "this insurance shall not apply nor contribute to the payment of any loss until all such specific insurance shall have been exhausted." Notwithstanding this language, Pacific contends that its excess insurance never became effective because the face of Detroit's policy exceeded the amount of the loss. But the clause quoted has the ring of intelligible English. ■ It must be given "such a construction . . . as if fairly warranted will best carry out the object for which the contract was entered into, namely, that of securing indemnity to the insured for the losses to which the insurance relates". (*Cutting* v. *Atlas Mutual Ins. Co.*, 199 Mass. 380 [85 N. E. 174] ; *Fageol* v. *Pacific Indemnity Co., et al., supra*.) It was held in the Cutting case that specific insurance is exhausted "when all that is collectible in respect to any given loss has been paid . . . when all that can be collected has been collected for a loss arising from any of the risks so insured against." ■ The very purpose of an agreement for indemnity is to make the indemnitee whole in event of the insolvency of the primary obligor. ■ We

can perceive no other intention to have been contemplated by the provision of the V. S. I. endorsement. When that rider was affixed to the Pacific policy there was no other insurance on the truck. Had the second policy never been issued the rider would surely have applied without a question. Since the legal effect of the Detroit policy was that it became primarily liable for the damage to the truck, we can conceive of no valid reason why Pacific should not still pay the loss if Detroit should prove to be insolvent.

Properly to distinguish the authorities cited by appellant (*Fairchild et al.* v. *Liverpool Ins. Co.,* 51 N. Y. 65; *Klotz Tailoring Co.* v. *Eastern Fire Ins. Co.,* 116 App. Div. 723 [102 N. Y. Supp. 82] ; *Hartford Steam Boiler Inspection & Ins. Co.* v. *Cochran Oil Mill & Ginnery Co.,* 26 Ga. App. 288 [105 S. E. 856] ) would unduly extend this opinion. They deal with a "floating policy", a policy covering proportionate liability, or a policy not represented on the appeal. They do not aid in interpreting the meaning of the V. S. I. endorsement which provides that it shall "not contribute to the payment of any loss until after specific insurance shall have been exhausted."

Also, the clause contains no requirement that even suggests that action against Pacific be delayed until Detroit's insolvency be demonstrated. If such had been intended by Pacific in composing the rider, it has demonstrated by its technical contentions on this appeal that it would have inserted such provision into the instrument by which it contracted to insure Fageol's interest in the truck. It was just that cautious in delaying Fageol's right of recovery or of filing a claim "unless and until the assured shall have made reasonable effort . . . to collect overdue balances and repossess the automobile." Since appellant inserted only such condition precedent to Fageol's right to recover the excess insurance while wholly omitting reference to the necessity of first proving the primary insurer insolvent, no other inference can be drawn than that such reference was not intended. Our conclusion appears even more reasonable in the light of the V. S. I. provision that after the automobile has been repossessed and *Fageol has failed to collect overdue balances* "the assured shall give immediate notice of loss to this company", etc. It would have been impossible to give such immediate notice of loss had Fageol been required first

to exhaust the primary insurance. Judging by the time this litigation has consumed (over seven years) appellant itself might have become insolvent before such exhaustion.

Moreover, if plaintiff had waited for such proof of insolvency of Detroit to be made, it would have breached another provision of the Pacific policy which required action to be ''commenced within twelve months after the happening of the loss.'' Such a covenant shortening the period of limitations is a valid provision of an insurance contract and cannot be ignored with impunity as long as the limitation is not so unreasonable as to show imposition or undue advantage. One year was not an unfair period of limitation. (*Tebbets* v. *Fidelity and Casualty Co.*, 155 Cal. 137 [99 Pac. 501]; *Beeson* v. *Schloss*, 183 Cal. 618 [192 Pac. 292].) Since the right of recovery accrued upon giving notice and continued for only twelve months it is clear to us that the Pacific never intended that the specific insurance should be exhausted before action could be instituted. The author of the policy must have known of the unlikelihood that a final judgment against the primary insurer could be entered and executed within one year. For this reason it was necessary that plaintiff seek an alternative judgment against Pacific while attempting to enforce payment primarily by Detroit.

2. The contention that the judgment is premature because it is based upon an unaccrued right is not supported either by authority or in reason. The V. S. I. endorsement is such a contract as to require an unusual judgment and its provisions control the form of the judgment. The judgment follows closely the logic of the endorsement which was intended to be of some value to the plaintiff. Inasmuch as the policy itself does not expressly require that the specific insurance be exhausted before suit be instituted or judgment rendered against Pacific, there is no reason why both companies should not have been sued in the same action and judgment entered in such form as to protect the rights of all parties to the action. (*Leese* v. *Sherwood*, 21 Cal. 151.) In view of the fact that appellant is fully protected against any requirement to pay anything to plaintiff so long as Detroit is able to pay the judgment, Pacific can suffer no detriment by that provision of the judgment making it contingently liable therefor upon the failure of

Detroit to respond to the judgment. (*Ward* v. *Blair*, 231 Ky. 96 [21 S. W. (2d) 123]; *Fidelity & Deposit Co.* v. *Bankers Trust Co.*, (Tex. Civ. App.) 161 S. W. 45.) In the latter case it was adjudged that execution should not issue against the excess insurer in the first instance.

The trends of judicial decisions and legislative enactments for many years have been to avoid a multiplicity of suits and a plurality of judgments. One of the statutory provisions, with this end in view, is contained in section 383 of the Code of Civil Procedure which provides: " . . . where the same person is insured by two or more insurers separately in respect to the same subject and interest, such person, or the payee under the policies or the assignee of the cause of action, or other successor in interest of such assured or payee, may join all or any of such insurers in a single action for the recovery of a loss under the several policies, and in case of judgment a several judgment must be rendered against each of such insurers *according as his liability shall appear.*" The language of that section emphatically disposes of the contention that both insurers could not have been properly joined in the same action, inasmuch as they insured with respect to the "same subject and interest."

The judgment in question "was rendered against each of such insurers according as his liability shall appear." The wisdom of the quoted code section is justified by the facts of the case at bar. Here the Detroit policy exempted that insurer from liability if there was other insurance. The Pacific policy provided that this appellant should not contribute to the loss until all specific insurance be exhausted. Having to determine whether the V. S. I. endorsement was "other insurance" or whether it was "excess insurance" could be more satisfactorily adjudicated with both insurers before the court at the same time. The facts of this case have demonstrated that one judge might have held that the Pacific policy was "other insurance" while another judge might have held it to be "excess." As a consequence, the quoted code section was designed to avoid such anomalous situations. By the application of that section practical protection of the rights of the insured will not be so readily defeated where all of the insurers are before the same court in a single action. The wisdom of such a procedure was justified by the

joinder of both insurers here by the very fact that it disposed of the questions of exhausting (1) the primary insurance, (2) the denials that there had been a collision or damage to the truck, and (3) the inability of plaintiff to collect the overdue balances from the purchaser.

3. Pacific finally contends that Fageol's repossession of the truck was unlawful and that since lawful repossession was a prerequisite to plaintiff's right to recover against appellant, the judgment must be reversed. The logic of such contention is (1) that Fageol extended the $500 payment on the truck for 30 days; (2) that it negotiated with Thomas after his default as to the $410 payment due January 10, 1933; (3) that after the wreck, it negotiated with Thomas to the end that he would again take the truck after repairs under a new contract; (4) that during such negotiations the truck was in Fageol's possession for repairs; (5) that by force of the four events last enumerated, Fageol waived the strict provision of, and so modified, the contract as to render necessary a reasonable notice to Thomas of plaintiff's intention to enforce the contract strictly. Neither the details of the actual transaction nor the authorities cited by the appellant supported its contention. No money was ever paid by Thomas other than the down payment of $2000. At the vendee's request on December 27, the date of the payment of the $500 installment due on December 21, 1932, was extended to January 21, 1933. The repeated demands upon Thomas for the $410 due January 10 were answered by repeated statements of his inability to pay and of his counter-proposals that Fageol accept partial payments of the sums past due. He continued his appeals until the day arrived for the payment of the $500. In the meantime the truck was wrecked on January 18. Nothing but demands for both payments continued after January 21, without avail. There was no acceptance of any delayed payment. The only "negotiations" between the buyer and the seller were demands for the defaulted payments on the one hand and the answer of inability to pay on the other. Neither conduct nor declaration by Fageol was calculated to lull Thomas into the belief that he might accept a notice of intention to terminate his contract on a designated future date. Moreover the record is devoid of any proof that Thomas believed himself secure against momentary forfeiture of the truck.

The case of *Beardslee* v. *North Pacific Finance Corp.*, 161 Wash. 86 [296 Pac. 155], does not support appellant's contention. The non-waiver provision of the conditional sales contract in that case was that no waiver of strict compliance with the contract should be deemed "a waiver of any *subsequent* failure of strict compliance", etc. The defendant was assignee of the original conditional sales contract. On June 22, 1929, after Beardslee had defaulted in paying two installments, defendant granted an extension. Just four days later defendant demanded payment of the two installments and threatened replevin of the property if payment should not be made immediately. The letter containing such threat was received by Beardslee on June 29, after the automobile had been repossessed. On the 1st of July he offered the delinquent installments when he was met with the demand for the full balance of the purchase price. He thereupon tendered the full amount which was rejected. In that case, the claim of the right of repossession was based upon payments already in default at the time leniency was granted by the payee. *After indulgence had been granted, there was no subsequent breach* but only the continued existence of the prior breaches. And finally the contract contained no provision that an extension of leniency should operate as a waiver of a *prior* breach.

In the light of the foregoing observations we turn now to a consideration of the terms of the Fageol contract and of the conduct of the parties prior to repossession. In the Fageol contract the non-waiver provision was as to any *prior or subsequent* breach. Fageol's notice of termination of the contract on February 20 stated that the repossession was on account of the default in payment of $410 due January 10. No payment had been accepted by Fageol after the latter date nor was any extension, waiver or delay promised to Thomas after the due date of the $410. After the $500 became due on January 21 no promise was made Thomas that he might have further time within which to make this payment. The default in the payment of the $410 on January 10 occurred *subsequent* to the only extension granted, to wit, that of the $500 payment due December 21. The contract provides that time is the essence of every part thereof; that neither acceptance of any overdue payment nor the waiver of any breach of any term or condition shall "operate

as a waiver of any other *prior or subsequent breach"*; and that upon default repossession may be gained without previous demand of performance. Having so provided, the parties were bound by such covenants to the same extent as they were bound by any other article of their agreement. By such provisions they neither violated a statute nor contravened public policy. ▉▉ Where a contract expressly provides that acceptance of installment payments after they become due shall not operate as a waiver of its forfeiture provision, the acceptance of past due payments does not waive strict performance as to any other payments or conditions stipulated in the contract. (*Pacific Finance etc. Co.* v. *Pierce*, 48 Cal. App. 600 [191 Pac. 1115] ; *Lundberg* v. *Switzer*, 146 Wash. 416 [263 Pac. 178, 59 A. L. R. 131].) ▉▉ It having been established that Thomas was in default as to the payment due January 10th and that such default was never waived, plaintiff's repossession of the truck was its absolute right.

The judgment is affirmed.

Gibson, C. J., Carter, J., Traynor, J., and Pullen, J., *pro tem.* concurred.