MASSACHUSETTS BAY TRANSPORTATION AUTHORITY vs.
ALLIANZ INSURANCE COMPANY, INC., & others.[1]

Suffolk. January 8, 1992. - August 20, 1992.

Present: LIACOS, C.J., ABRAMS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Insurance*, Liability insurance, Construction of policy, Insolvency of in-
surer, Coverage. *Contract*, Insurance. *Practice, Civil*, Summary
judgment.

Where no language in a policy of second-layer excess liability insurance
had the effect of rendering ambiguous the clear policy language, the
lower limits of excess insurance benefits did not "drop down" to fill the
void in underlying insurance created by the insolvency of an underlying
insurance carrier; consequently, with respect to the insured's contract
claim against the second-layer excess liability insurer, on which no ma-
terial facts were in dispute, summary judgment for the insurer was ap-
propriate; moreover, in the circumstances, summary judgment for the
insurer was correctly allowed on the insured's statutory claims under
G. L. c. 93A and G. L. c. 176D and on its common law claim with
respect to good faith and fair dealing. [476-479]
There was no merit to an insured's assertion that certain insurance cover-
age provided by two third-layer excess liability insurers should "drop
down" to fill the void created by the insolvency of the primary insurer.
[479-481]

CIVIL ACTION commenced in the Superior Court Depart-
ment on December 20, 1989.

A motion to dismiss was heard by *Elizabeth B. Donovan*,
J., and the case was heard by *Barbara A. Dortch*, J., on mo-
tions for summary judgment.

The Supreme Judicial Court granted a request for direct
appellate review.

[1]Lexington Insurance Company and First State Insurance Company.

*Nancer H. Ballard* (*A. Lauren Carpenter* with her) for the plaintiff.

*William P. Hurley* (*Edward W. Waystack* with him) for Allianz Insurance Company, Inc.

*John B. Sheehan* for Lexington Insurance Company.

*Allan E. Taylor* for First State Insurance Company.

O'CONNOR, J. In this case we revisit the question whether the lower limits of excess insurance benefits "drop down" to fill a void in underlying insurance created by the insolvency of an underlying carrier. See *Vickodil* v. *Lexington Ins. Co.*, 412 Mass. 132 (1992); *Gulezian* v. *Lincoln Ins. Co.*, 399 Mass. 606 (1987); *Massachusetts Insurers Insolvency Fund* v. *Continental Casualty Co.*, 399 Mass. 598 (1987). The parties filed cross motions for summary judgment. A judge in the Superior Court allowed the plaintiff's (MBTA) motion with respect to its contract claim against Allianz Insurance Company, Inc. (Allianz), and denied the MBTA's motion with respect to its claims against Allianz asserting violations of G. L. c. 93A (1990 ed.) and G. L. c. 176D (1990 ed.) and asserting breach of an implied covenant of good faith and fair dealing. Consistent with those rulings, the judge denied Allianz's motion for summary judgment on the MBTA's contract claim, and allowed Allianz's motion as to the other claims. Also, the judge denied the MBTA's motion for summary judgment against the other defendants and allowed those defendants' cross motions. The judge ruled that Allianz's excess coverage drops down to cover nine fourteenths of the MBTA's loss in excess of collectible underlying insurance (9/14 x \$1,800,000 = \$1,157,142.70), but that none of the other excess insurance drops down. The MBTA appeals the judge's ruling that Allianz is not required to pay the MBTA's entire loss in excess of collectible underlying insurance, and the dismissal of its other claims against Allianz. The MBTA also appeals the judgments in favor of the other defendants on the contract and the c. 93A, c. 176D and common law claims. Allianz appeals the judgment against it in favor of the MBTA. We reverse the judgment against Al-

lianz. We affirm the judgments in favor of the other defendants.

The following facts are undisputed. On December 18, 1982, Eleanor Currie was struck and seriously injured by an MBTA bus. Following a trial in 1986, a jury rendered a verdict in Currie's favor against the MBTA that, with prejudgment interest, resulted in a judgment of $3,300,000. While the MBTA's appeal was pending (and postjudgment interest was accumulating), the MBTA and Currie entered into a settlement agreement providing for a payment of $3,100,000. The MBTA paid Currie that amount.

At the time of the accident, the MBTA was self insured for $1,000,000 per occurrence. In addition, the MBTA was insured by five carriers forming three layers of excess coverage. The first layer was provided by Integrity Insurance Company (Integrity) in the sum of $5,000,000 in excess of the MBTA's $1,000,000 self insurance for each occurrence. The second layer of coverage was provided by policies issued by Allianz and Mutual Fire, Marine and Inland Insurance Company (Mutual Fire), which was a defendant in the Superior Court but is not a party on appeal. Allianz's policy provided $9,000,000 coverage, and Mutual Fire's policy provided $5,000,000. The third level of coverage was provided by the defendant Lexington Insurance Company (Lexington) in the amount of $22,500,000, and First State Insurance Company (First State) in the amount of $7,500,000.

In March, 1987, the first-layer excess carrier, Integrity, was declared insolvent, and thereafter the Massachusetts Insurers Insolvency Fund paid the MBTA $299,999.99, the maximum statutory allowance. The MBTA notified the excess carriers of the Currie claim and Integrity's insolvency. In February, 1989, Mutual Fire, which, together with Allianz was a second-level excess carrier, was also declared insolvent. After the MBTA deducted from the $3,100,000 Currie settlement amount the $1,000,000 in self insurance and the $299,999.99 the MBTA received from the Massachusetts Insurers Insolvency Fund, the MBTA sought the $1,800,000 balance from Allianz, Lexington and First State. Those in-

surers rejected the MBTA's claims, asserting that the lower limits of their coverage did not drop down to replace the first excess layer that had become uncollectible because of Integrity's insolvency.

Summary judgment is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). Here, there are no material facts in dispute. The only dispute is about the proper interpretation of the relevant insurance policies, and therefore raises only a question of law. *Nelson* v. *Cambridge Mut. Fire Ins. Co.*, 30 Mass. App. Ct. 671, 673 (1991).

Paragraph 1 of the "Insuring Agreement" of the Allianz policy defines Allianz's liability in relation to the underlying insurance in this way: "The Company hereby indemnifies the insured against ultimate net loss in excess of and arising out of the hazards covered and as defined and *in excess of the underlying insurance as shown in Item 3 of the Declarations* (hereinafter referred to as 'underlying insurance')" (emphasis added). Item 3 of the Declarations provides: "Underlying Insurance: A) $5,000,000 excess of self-insured retention — $1,000,000 per occurrence as respects buses and trolleys and $2,000,000 per occurrence as respects other transportation units (trains) — Integrity Insurance Company — policy number to be advised." In addition, Item 4 of the Declarations states: "Limit(s) of Coverage Hereunder: $9,000,000 part of $14,000,000 *excess of Item 3*" (emphasis added). Paragraph 4 of the "Insuring Agreement" is also relevant. It provides: "Unless aggregate limits are specifically stated in Items 3 and 4 of the Declarations [which they are not in this case], the coverage provided by this Policy applies only with respect to each accident or occurrence for limits *in excess of the amount provided for same in the underlying insurance* and does not apply over any reduced amount of underlying insurance in the event of the exhaustion or reduction of aggregate limits (if any) in the underlying insurance" (emphasis added). "Underlying insurance" is defined in paragraph 1 of the "Insuring Agreement" as the "insurance shown in

Item 3 of the Declarations," that is, the $5,000,000 coverage provided by Integrity in addition to the $1,000,000 self insured retention. There is nothing ambiguous about any of that language. It provides that Allianz's commitment is to pay excess of the MBTA's self insurance and the *commitment* made by Integrity. The Allianz policy makes clear that the lower limit of its excess indemnity coverage is not adjustable downward in response to the insolvency of the first-level excess carrier. This case, therefore, is readily distinguishable from *Massachusetts Insurers Insolvency Fund v. Continental Casualty Co.*, 399 Mass. 598 (1987), in which there were two provisions that, when read together, created an ambiguity that was then construed against the insurer. *Id.* at 598.

The MBTA argues that the judge correctly determined that two provisions of the Allianz policy, especially when read together, create an ambiguity concerning whether the lower limits of Allianz's coverage drop down to fill the void left by Integrity's insolvency. Therefore, the MBTA argues, in keeping with the principle that ordinarily ambiguities in insurance policies are resolved against the insurer, *Vickodil v. Lexington Ins. Co.*, 412 Mass. 132, 135 (1992); *Gulezian v. Lincoln Ins. Co.*, 399 Mass. 606, 612 (1987); *Massachusetts Insurers Insolvency Fund v. Continental Casualty Co.*, *supra* at 600, the judge correctly concluded that Allianz's coverage drops down in this case. We do not agree that the provisions on which the judge focused, or any other provisions in the Allianz policy, created an ambiguity with respect to whether the Allianz coverage crops down in the event of the insolvency of a lower level excess carrier, and therefore we do not agree that the insurance provided by Allianz drops down.

The judge's memorandum invites special attention to paragraphs 11 and 3 of the "Insuring Agreement." Paragraph 11 provides in part: "The Company's obligation to pay any ultimate net loss and costs with respect to any accident or occurrence falling within the terms of this Policy shall not attach until the amount of the *applicable underlying limit* has been paid by or on behalf of the insured on account of

such accident or occurrence" (emphasis added). The judge reasoned that this court decided in *Gulezian, supra* at 611-612, that "the phrase 'applicable underlying limit' in a virtually identical excess insurance policy provision create[d] an ambiguity as to whether the insurance policy drops down when the underlying insurance is not recoverable" (footnote omitted). The judge noted the court's observation in *Gulezian* that, if the excess insurance were not to drop down when the underlying insurance is uncollectible, "an insured would obtain no benefit from his excess coverage upon the insolvency of his primary insurer if he could not himself provide the funds necessary to pay claims equal to the primary insurer's deficiency," a result that the court suggested would be "unconscionable." *Id.* at 612. The court's observation in *Gulezian* was not intended to go as far as the judge took it. Despite the suggestion of unconscionability in *Gulezian*, the court did not hold in that case that the phrase "applicable underlying limit" in the policy under consideration there was ambiguous for that reason alone. Rather, in *Gulezian*, the policy language was determined to be ambiguous because several provisions, read together, created uncertainty about whether coverage would drop down in the event of an underlying carrier's insolvency. In *Gulezian*, the phrase "applicable limits" was manifestly used in some provisions as meaning "collectible limits," making unclear the intended meaning of that term elsewhere in the policy. *Id.* at 609-612. The court's observation about unconscionability only served to support the conclusion concerning ambiguity that was otherwise dictated by the policy's provisions.[2] Unlike the policy in *Gulezian*, the Allianz policy has no other language that renders ambiguous the clear language of paragraph 11 which provides that Allianz's obligation to pay "shall not attach until the amount of the applicable underlying limit has been

---

[2]In any event, the record in the present case would not demonstrate that, in light of the premium charged by Allianz, it would be unconscionable for Allianz's coverage not to drop down in the event of the underlying insurer's insolvency.

paid by or on behalf of the insured on account of [an] accident or occurrence [falling within the terms of the policy]."

The "maintenance provision," paragraph 3 of the "Insuring Agreement" in the Allianz policy, on which the judge also relied, is as follows: "The limits of the underlying insurance shall be maintained in full effect during the currency of this Policy except for reduction of such limits by exhaustion of aggregate limits (if any) contained therein solely by payment of claims resulting from accidents or occurrences happening during the period thereof. Failure of the Insured to comply with the foregoing shall not invalidate this Policy but in the event of such failure the company shall be liable only to the extent that it would have been liable had the Insured complied therewith." We see nothing in that provision that suggests that Allianz's coverage drops down to replace the uncollectible coverage of an insolvent underlying insurer. Read together with the other policy language quoted earlier, the maintenance provision does not create any ambiguity in the policy concerning Allianz's obligation.

We conclude that Allianz is entitled to summary judgment in its favor on the MBTA's contract claim. Our conclusion in that regard leads to the further conclusion that the judge was correct in allowing Allianz's motion for summary judgment as to the MBTA's other claims based on G. L. c. 93A and G. L. c. 176D and the common law with respect to good faith and fair dealing. We do not understand the MBTA to have contended in the Superior Court, or to contend here, that, even if Allianz was legally correct in disclaiming coverage, Allianz acted unfairly or deceptively or in bad faith. Furthermore, nothing in the record suggests that such a contention would have merit. See *Jet Line Servs., Inc.* v. *American Employers Ins. Co.*, 404 Mass. 706, 717 (1989) ("American's denial of coverage of the damage to the Air Force tank under the policy was legally correct, and hence was neither an unfair nor a deceptive act").

We turn now to the MBTA's assertion that the judge erred in ruling that the coverage provided by the third-layer excess carriers, Lexington and First State, does not drop

down to fill the void created by Integrity's insolvency. Lexington's and First State's policies contain "following form" provisions, which say that the policies are subject to all the conditions, agreements, exclusions and limitations of the underlying policies. The judge ruled that in this case the third-layer carriers follow the Mutual Fire policy, which expressly excludes the dropping down of coverage, and not the Allianz policy, which the judge concluded does provide drop down coverage. The MBTA argues that, since the third-layer policies purport to "follow" both the second-layer policies, one of which provides drop down coverage and the other of which does not, an ambiguity results, which must be resolved against Lexington and First State. As the MBTA puts it, "[b]ecause [the insurers] are responsible for those ambiguities, public policy prevents their escaping liability by choosing to 'follow' the more favorable underlying policy and disregarding the one they find distasteful." The MBTA's argument fails because it is grounded on the premise that the Allianz coverage drops down. We have concluded otherwise.

The MBTA makes a second argument relative to the third-layer excess carriers. The MBTA states that the Lexington and First State policies provide that "they incorporate the underlying policies only to the extent that the underlying policies are not inconsistent with their own terms." The Lexington and First State policies' own terms, the argument goes, "require an excess insurer to drop down and provide coverage when the underlying carrier is insolvent." Lexington's policy provides: "Liability of the Company under this policy shall not attach unless and until the Insured or the Insured's Underlying Insurance has paid or has been held liable to pay the total applicable underlying limits." Similarly, the First State policy provides: "Limits of Liability — Underlying Limits: Liability under this policy shall attach to the Company only after the underlying insurers have paid or have been held to pay the full amount of their respective loss liability as described in the underlying limits." In *Northmeadow Tennis Club, Inc.* v. *Northeastern Fire Ins. Co. of Pa.*, 26 Mass. App. Ct. 329, 332-333 (1988), the Ap-

peals Court held that the phrase "held liable to pay" makes the excess insurer liable to the limits of its policy, beginning with the first dollar of the insured's liability in the event that the underlying insurer does not pay because of insolvency. However, in *Vickodil* v. *Lexington Ins. Co.*, *supra* at 138, which was not decided until after the oral argument in this case, we held that such a provision "speaks only to the insurer's liability to pay excess. It says nothing about the excess coverage lower limit dropping down." We conclude that the provisions relied upon by the MBTA do not call for Lexington's and First State's coverage to drop down.

Finally, the MBTA argues that the maintenance provision in Lexington's policy, which is almost identical to the maintenance provision in the Allianz policy, creates an ambiguity that should be construed in favor of the insured. As we indicated earlier in this opinion, while discussing Allianz's policy, such a maintenance provision does not create an ambiguity, and therefore that provision in Lexington's policy is not helpful to the MBTA.

We reverse the judgment against Allianz and remand the case to the Superior Court for the entry of judgment in Allianz's favor on all claims. We affirm the judgments for the other defendants.

*So ordered.*