K.R. BARRETT, an Underwriter at Lloyd's of London and all other Lloyd's Underwriters subscribing to Policy No. PG124683, CNA Reinsurance of London, Ltd., Bermuda Fire & Marine Insurance Company, Insco, Ltd. and Brittany Insurance Co. Ltd., Plaintiffs,

v.

Danny CHIN, Risk Management Foundation of the Harvard Medical Institutions, Inc., Pacific Employers Insurance Company, American Home Assurance Co., Lexington Insurance Co., First State Insurance Co., Northbrook Excess and Surplus Insurance Co., Transit Casualty Company and Mutual Fire and Inland Insurance Company, Defendants.

Civ. A. No. 91–10843–MA.

United States District Court, D. Massachusetts.

Jan. 14, 1994.

Christopher A. Duggan, Scott A. Smith, Smith, Duggan & Johnson, Boston, MA, for K.R. Barrett, CNA Reinsurance of London, Ltd., Bermuda Fire & Marine Ins. Co., British–American Ins. Co., and Zurich Intern. (UK) Ltd.

Thomas R. Paxman, Hutchins & Wheeler, for Danny Chin.

Walter G. Murphy, Murphy, Demarco & O'Neill, Boston, MA, for Risk Management Foundation of The Harvard Medical Institutions, Inc.

Scott J. Tucker, Parker, Coulter, Daley & White, Boston, MA, American Home Assur. Co.

Mark E. Cohen, McCormack & Epstein, Boston, MA, for Lexington Ins. Co.

Susan G. Winkler, Allan E. Taylor, Taylor, Anderson & Travers, Boston, MA, for First State Ins. Co.

John B. Connarton, Jr., Medverd, Connarton & Simmons, Boston, MA, Herbert Dicker, Wilson, Elser, Moskowitz, Edelman & Dicker, New York City, for Northbrook Excess & Surplus Ins.

Erik Lund, Posternak, Blankstein & Lund, Boston, MA, for Mutual Fire, Marine and Inland Ins. Co.

Harvey Weiner and Michael P. Duffy, Peabody & Arnold, Boston, MA, for Insurance Co. of North America.

Frederic N. Halstrom, Halstrom Law Offices, Boston, MA, for William Harlow.

Andrea S. Barisano, Michael W. Gallagher, Donahue & Donahue, Lowell, MA, for Ludgate Ins. Co., Ltd., Winterthur Swiss Ins. Co., Compagnie Europeene D'Assurances Industrielles S.A. and Walbrook Ins. Co., Ltd.

### MEMORANDUM AND ORDER

MAZZONE, District Judge.

This suit for declaratory judgment was originally filed on March 18, 1991 by certain insurance underwriters seeking a determination that they were relieved from any obligation to provide coverage as a result of a state court judgment. On November 21, 1991, I appointed the Honorable James P. Lynch, Jr. as Special Master "for the purpose of considering all claims presented in this case by the parties and for such other matters as may arise...." On December 1, 1993, the Special Master issued a Memorandum and Recommendation of Special Master on Cross Motions for Summary Judgment as to three of the defendants, granting Defendants-in-crossclaim American Home Assurance Company ("American Home") and Federal Insurance Company's ("Federal") motions for summary judgment, and denying Plaintiff-in-crossclaim Risk Management Foundation, Inc.'s ("RMF") motion for summary judgment. American Home and Federal now move, pursuant to Fed.R.Civ.P. 53(e)(2), that the Court adopt the Special Master's recommendation that the insurance policies issued by American Home and Federal do not "drop down" to provide coverage. RMF moves, pursuant to Fed.R.Civ.P. 53(e)(2), that this Court reject the Special Master's recommendation and requests consideration of its objections to the recommendation.

After careful consideration of RMF's objections, review of the Special Master's Report and relevant law, I adopt the Special Master's recommendation in its entirety.

### HISTORY

The report of the Special Master reviewed the procedural history and factual background thoroughly, so I will only restate those facts relating to the motions before me. Briefly, Defendant RMF, the administrator of a professional liability program, obtained insurance for various Harvard affiliated hospitals and their employed physicians, including Massachusetts General Hospital and Danny Chin, M.D. The hospital and physician had primary and excess insurance through one insurer, as well as four commercial excess layers of insurance with nine participating insurers. A state court judgment was entered against Chin. Payments were made by the primary and excess insurer, and by certain insurers in the first commercial excess layer. Two insurers in the first commercial excess layer were insolvent. Thereafter, this suit was filed by underwriters participating in the second and third commercial excess layers to determine the extent of their liability. Defendants included Chin, RMF and the insurers participating in the first and second commercial excess layers.

### DISCUSSION

#### A. American Home Assurance Company

■ Generally, ambiguities in insurance policies are resolved against the insurer. *Vickodil v. Lexington Ins. Co.*, 412 Mass. 132, 135, 587 N.E.2d 777 (1992). Therefore, if an excess insurance policy is found to be ambiguous, it "drops down" to provide coverage. *See Massachusetts Bay Transportation*

*Authority v. Allianz Insurance Company,* 413 Mass. 473, 597 N.E.2d 439 (1992). With these precepts in mind, RMF raises several objections to the Special Master's report. In connection with the American Home policy, RMF objects to the characterization of the relevant policy language as an "other insurance" clause, and specifically takes issue with the Special Master's interpretation of the term "available."

The American Home policy states: "Except as respect [sic] coverage written specifically to apply excess of this insurance, this policy shall be excess insurance over any other insurance or indemnity *available* to the Insured with respect to an event covered hereunder." (emphasis added). RMF argues that since the term "available" is not specifically defined in the Insuring Agreement, then the ordinary meaning of the term applies. RMF asserts that the ordinary meaning of the word obligates American Home to provide excess coverage where the underlying insurance is unavailable for *any* reason, including insolvency of the carrier.

The Special Master construed the term and the accompanying language as being an "other insurance" provision, namely, it confirms that the policy is, in fact, an excess policy. He explained that the phrase "any other insurance ... available" "refers to unscheduled insurance other than the scheduled underlying coverage limits identified in the excess policy." Master's Report at 12. My reading of Massachusetts case law supports this analysis. In *Vickodil,* the SJC asserted that similar language simply distinguished the liability limits of the underlying insurance from the limits in other irrelevant underlying policies.

> The word "applicable" in the phrase "total applicable underlying limits" distinguishes the limits of liability stated in the underlying policy or policies covering the loss from limits of liability that might be contained in irrelevant underlying policies.

*Vickodil,* 412 Mass. at 138, 587 N.E.2d 777 (citing *Gulezian v. Lincoln Ins. Co.,* 399 Mass. 606, 609, 506 N.E.2d 123 (1987)). In reversing the lower court, the SJC in *Allianz* stated that its "observation [that the phrase "applicable underlying limit" was ambiguous] in *Gulezian* was not intended to go as far as the [lower court] judge took it." The *Allianz* court took pains to factually distinguish *Gulezian.* The *Gulezian* court, after reviewing the entire policy, found the term "applicable" was used later in the policy in a "different sense." Finding that the word had more than the "precise, restricted meaning" ascribed to it earlier, the court held an ambiguity existed. *Gulezian,* 399 Mass. at 611, 506 N.E.2d 123. The SJC in *Allianz* found the language "applicable underlying limit" in the context of the policy to be clear, not ambiguous. *Allianz,* 413 Mass. at 480, 597 N.E.2d 439. No ambiguities were created by the policy. *Id.* I find the relevant language at issue here to be substantially the same as the language in *Vickodil* and *Allianz* and with like purpose. Therefore, I concur with the Special Master that no ambiguity exists which would suggest the policy drops down.

RMF further argues that the presence of a second clause entitled "other insurance"[1] results in ambiguity in the policy, requiring the American Home policy to drop down. I find that this second clause does not render the prior clause ambiguous and agree with the Special Master that "no irreconcilable inconsistency" exists in the policy.

## B. Federal Insurance Company

■ RMF also challenges the recommendation that Federal's policy does not drop down. RMF draws attention to the language of the Insuring Agreement, which states: "[t]he insurance afforded by this policy shall apply only in excess of and after all UNDERLYING INSURANCE (as scheduled in Item 6 of the Declarations) has been exhausted." RMF focuses on the term "exhausted" citing *Federal Insurance Company v. Scarsella Bros., Inc.,* 931 F.2d 599 (9th Cir.1991),

---

1. "Other Insurance: The Insurance afforded by this policy is primary insurance, *except when stated to apply in excess of* or contingent upon the absence of other insurance." American Home policy, Endorsement #2 at 15. (emphasis added). The first insurance clause mentioned appears on page one of Endorsement #2, and indicates the policy "... shall be excess insurance...." *Id.* at 1.

where the Ninth Circuit found the term "exhausted" to be ambiguous and held that the policy at issue dropped down due to this ambiguity. *Scarsella Bros.* cited *Fageol Truck & Coach v. Pacific Indem. Co.*, 18 Cal.2d 748, 117 P.2d 669 (1941), which referenced *Cutting v. Atlas Mutual Ins. Co.*, 199 Mass. 380, 383, 85 N.E. 174 (1908) for the proposition that insurance has been "exhausted" when all proceeds for a given loss that can be collected, have been collected. RMF seeks to show that *Cutting*, a case which involved a co-insurance clause in a fire insurance policy, would be applied by the Massachusetts Supreme Judicial Court ("SJC") in this case would find the term "exhausted" to be ambiguous, resulting in the Federal policy "dropping down" to provide coverage. The Special Master cited *New Process Baking Company v. Federal Ins. Co.*, 923 F.2d 62 (7th Cir.1991), a case involving an excess insolvent insurer. There, the same policy language, including the term "exhausted,"[2] was not found to be ambiguous and therefore the excess policy did not drop down. I agree with the Special Master that it is "far from certain" that the Massachusetts courts would interpret the word "exhausted" in the insurance clause as did the Ninth Circuit in *Scarsella Bros.* The current posture of the state law in this area does not suggest the Massachusetts courts would find this term ambiguous.

The SJC's decisions in *Massachusetts Bay Transportation Authority v. Allianz Insurance Company*, 413 Mass. 473, 597 N.E.2d 439 (1992) and *Vickodil v. Lexington Ins. Co.*, 412 Mass. 132, 587 N.E.2d 777 (1992), both which reversed the lower court's findings that excess insurance policies did drop down, signal a direction different from *Gulezian v. Lincoln Ins. Co.*, 399 Mass. 606, 506 N.E.2d 123 (1987) and *Massachusetts Insur-*

*ers Insolvency Fund v. Continental Casualty Co.*, 399 Mass. 598, 506 N.E.2d 118 (1987), which held that the excess insurance policies dropped down to provide coverage. The SJC in *Vickodil* specifically singled out *Northmeadow Tennis Club, Inc. v. Northeastern Fire Ins. Co.*, 26 Mass.App.Ct. 329, 526 N.E.2d 1333 (1988), where the Appeals Court, applying *Continental* and *Gulezian*, found that the excess policy dropped down. The *Northmeadow* policy provision stated the insurer's liability attached only after the primary insurers "have paid or have been held liable to pay the full amount of their respective ultimate net loss." *Vickodil*, 412 Mass. at 137, 587 N.E.2d 777 (quoting *Northmeadow*, 26 Mass App.Ct. at 332, 526 N.E.2d 1333). The *Vickodil* court specifically declined to follow *Northmeadow's* interpretation, determined that the *Vickodil* policy,[3] spoke only to the insurer's liability to pay *excess* and found no basis on which to hold the policy drops down. *Vickodil*, 412 Mass. at 134–135, 137–138, 587 N.E.2d 777. As stated earlier, the SJC in *Allianz* also carefully distinguished the policy language at issue in *Gulezian.* There, the court repeated its refusal to follow the Appeals Court's interpretation of the insurance policy in *Northmeadow.* In other words, the SJC's recent opinions[4] have consistently read *Gulezian* and *Continental* in a more limited fashion. Furthermore, the language of the policies at issue are quite similar to those in the *Allianz* and *Vickodil.*

The Federal policy states: "insurance afforded by this policy shall apply only in *excess* of and after *all* UNDERLYING INSURANCE ... has been exhausted." (emphasis added). In *Vickodil*, the policy at issue stated the insured was indemnified "against loss which is the *excess* of the total limit(s) of *all* Underlying Insurance specified

---

**2.** " 'Exhaustion,' [the Seventh Circuit] concluded, within the meaning of Federal's excess policy does not occur until the underlying insurance limits have been met through payment." Master's Report at 13.

**3.** The policy states that the insurer "agrees to indemnify the insured ... against loss which is excess of the total limit(s) of all Underlying Insurance specified in Section II...." and that liability "shall not attach unless and until the

Insured or the Insured's Underlying Insurance *has paid or has been held liable to pay the total applicable underlying limits." Vickodil*, 412 Mass. at 135, 587 N.E.2d 777. (emphasis added).

**4.** *Vickodil* was not decided until after oral arguments in *Allianz*, suggesting the SJC considered the issues simultaneously. *See Allianz*, 413 Mass. 473, 481, 597 N.E.2d 439.

in Section II(b) of the Declarations subject to the limit of liability stated in Section 1(c). . . ." (emphasis added). *Vickodil,* 412 Mass. at 135, 587 N.E.2d 777. The *Vickodil* court distinguished this from the policy in *Continental.* In *Continental,* similar language existed, but the policy also contained a provision that if the underlying limit had been "reduced," the policy would be adjusted to fill the gap. Since the policy was silent as to *how* the limits might be reduced, the policy was found to be ambiguous and therefore dropped down to provide coverage. *Vickodil,* 412 Mass. at 136, 587 N.E.2d 777.

The Federal policy specifically states it is an "excess" policy, just as the policies in *Vickodil* and *Continental.* RMF attempts to show ambiguity by focusing on the word "exhausted." Since there are no Massachusetts cases interpreting this term in this context, I must follow the direction in which the cases point. I do not feel that the meaning of the term "exhausted" is analogous to the situation in *Continental,* where the term "reduced," together with the policy's accompanying silence as to how a reduction might change the limit of the excess coverage, resulted in the policy dropping down. Considering the circumscribed application of *Gulezian* and *Continental,* without specific guidance from the SJC, and considering the conflicting opinions of the Seventh and Ninth Circuits, I agree with the Special Master that the language in the Federal policy indicates that the policy does not drop down to provide coverage. I concur with the Special Master that Federal's policies are excess policies, attaching only in excess of underlying insurance. Liability commences only when all underlying insurance is exhausted, namely, when the loss totals $31,000,000 per claim, $50,000,000 aggregate under the third commercial excess policy and $46,000,000 per claim, $65,000,000 aggregate under the fourth layer. Master's Report at 13. As stated in the report, since this loss did not exceed the aforementioned amount, the Federal policies, by their terms, do not attach.

**CONCLUSION**

For the aforementioned reasons, I adopt the recommendation of the Special Master that the insurance policies issued by Ameri-can Home and Federal do not drop down. Accordingly, American Home and Federal's motions for summary judgment are granted; RMF's motion for summary judgment is denied.

SO ORDERED.